El Banco Español de Puerto Rico et al *v.* Bolivar et al.

Apelación procedente de la Corte de Distrito de San Juan.

No. 53.—Resuelto en Mayo 23, 1904.

Mandatarios—Mandantes—Obligaciones.—Autorizado un mandatario para tomar dinero á préstamo, puede válidamente otorgar pagarés con tal carácter, y obligar á su mandante al cumplimiento de la obligación en ellos consignada, sin que pueda desvirtuar la naturaleza de tal obligación, la circunstancia de que el mandatario no haya hecho uso de las cantidades así obtenidas en beneficio de los intereses de su mandante.

Id.—Exigibilidad de las Obligaciones.—Acreditada en juicio la legitimidad de las firmas estampas en unos pagarés así ·como la certeza de la deudas que los mismos entrañan, y su vencimiento, las obligaciones consignadas en tales pagarés son perfectamente válidas y exigibles.

Mandantes—Mandatarios.—La ratificación por el mandante de los actos ejecutados por su mandatario, subsana *ipso facto* cualesquiera defectos que pudieran existir en la representación legal obstentada por el último.

Contratos—Causa Falsa—Nulidad.—La expresión de una causa falsa en los contratos dá lugar á la nulidad de los mismos, si no se probare que estaban fundados en otra verdadera y lícita.

·Contrato Simulado—Fraude.—Un contrato sobre enajenación de bienes inmuebles, en que el notario da fé de la entrega del precio, es, sin embargo, simulado y nulo, por lo tanto, si la prueba demuestra que prevaleció en él la intención de impedir que los acreedores del vendedor cobraran sus créditos.

Id.—Solvencia del Vendedor.—La circunstancia de ·que el vendedor, en un contrato simulado, estuviere interesado en una sociedad mercantil, no puede alegarse en favor de su solvencia, pues sus intereses en la sociedad encuéntranse comprometidos por las operaciones de la misma, y habrán de estar á las resultas de·su liquidación.

Nulidad de Contratos, de Títulos y de Inscripciones.—Habiendo demostrado la prueba que la causa de esos contratos fué falsa, sin que siquiera se hubiera intentado probar que estaban fundados en otra verdadera y lícita, hay que convenir en que son nulos, como también los títulos inscritos en el Registro, y nulas las inscripciones que esos títulos hubieran causado, pues la inscripción no convalida los actos y contratos que sean nulos con arreglo á derecho.

Id.—Disposiciones Referentes á los Contratos Simulados.—Las disposiciones vigentes en materia de simulación de contrato deben ser estrictamente interpretadas y aplicadas, para evitar así los males que han tratado de combatir.

Id.—Acreedores—Terceros Poseedores.—Probada la simulación de un contrato, los acreedores pueden dirigir su acción contra el deudor y contra el que posea sus bienes á título de dueño, siendo en este caso, el poseedor, responsable de lo adeudado hasta donde alcance el valor de dichos bienes.

## EXPOSICIÓN DEL CASO.

Vistos estos autos promovidos en la Corte de este Distrito entre partes de la una como demandantes el Banco Español de Puerto Rico, la razón social J. T. Silva Banking and Commercial Company y Don Francisco de P. Acuña establecidos en esta ciudad y de la otra como demandados Don Herminio Diaz Navarro, por su propio derecho, Don Gorgonio y Doña Basilisa de Bolívar y Alvárez, el primero abogado vecino de esta Capital, el segundo vecino de Bilbao

y la tercera de Vizcaya, Munguia (España) dirigidos y representados los demandantes en esta Superioridad por el Letrado Don Antonio Sarmiento Porras, y los demandados por el Licenciado Don Herminio Diaz Navarro, autos de juicio ordinario sobre cobro de pesos, nulidad de contratos, de escrituras y de inscripciones; pendientes ante Nos en virtud de recurso de apelación interpuesto por la parte actora contra la sentencia pronunciada que copiada á la letra dice así:

*"Sentencia.*—En la ciudad de San Juan de Puerto Rico á veinte y ocho de Marzo de mil novecientos tres. Vistos en juicio oral y público los presentes autos declarativos en cobro de pesos, nulidad de escritura y nulidad de inscripciones, seguidos entre partes, de una como demandantes, el Banco Español de Puerto Rico, J. T. Silva Banking and Commercial Company y Don Francisco de Paula Acuña, representados en un principio por los Letrados Señores Sarmiento y Palacios Rodríguez y posteriormente por el primero solamente; y de la otra como demandados Don Herminio Diaz Navarro, Don Gorgonio y Da. Basilisa Bolívar, representados primeramente por el Licenciado Diaz Navarro, y con posterioridad por el abogado Don Jacinto Texidor y Alcalá del Olmo, sin que consten las generales de ninguna de las partes contendientes.

1. *Resultando*: que en catorce de Marzo de 1901 se presentó por el Letrado Don Antonio Sarmiento en representación del Banco Español de Puerto Rico demanda en juicio declarativo contra Don Gorgonio Bolívar: Doña Basilisa Bolívar y Don Herminio Diaz, interesando. 1. que se condenase á Don Gorgonio Bolívar y Alvárez á pagar al Banco Español de Puerto Rico la suma de veinte mil cuatrocientos *dollars* procedentes de dos pagarés vencidos acompañados por el actor, é intereses vencidos y que se vencieran á razón del doce por ciento anual; 2. que se declararan nulas las escrituras de enajenación de bienes otorgadas en tres y diez y nueve de Enero de 1901, por Don G. Bolívar á favor respectivamente de Doña Basilisa Bolívar y Don Herminio Diaz Navarro ante el Notario de San Juan Don Santiago R. Palmer: 3. que se declararan nulas las inscripciones de dichos actos en el Registro de la Propiedad de San Juan y 4, que se procediera desde luego contra los bienes enajenados en dichas escrituras para hacer efectiva la suma reclamada, consignándose como hechos fundamentales de dicha demanda que Don Juan Arruza con-

trajo, como apoderado de Don Gorgonio Bolívar, las obligaciones
consignadas en los pagarés ameritados de fecha diez y treinta y
uno de Diciembre de 1900, vencederos en veinte y ocho de Enero y
doce de Febrero de mil novecientos y uno: que á pesar de ser tales
obligaciones, conocidas por Gorgonio Bolívar, enajenó inmuebles
y derechos reales en tres de Enero de mil novecientos uno por valor de
sesenta y tres mil dollars á favor de su hermana Doña Basi-
lisa, de quien se dijo apoderado, sin acreditar tal carácter, Don
Herminio Diaz que aparece entregando al vendedor Don Gorgonio
Bolívar la indicada suma ante el Notario autorizante Señor Palmer,
y un solar por valor de dos mil dollars á favor de Don Herminio
Diaz; que Don Gorgonio Bolívar requerido al efecto no reconoció
la firma de su apoderado Señor Arruza, puesta en los pagarés de re-
ferencia, manifestar ignorar la certeza de la deuda, confirmando
la certeza de las enajenaciones referidas y exponiendo que ha con-
servado en su poder bienes bastantes para cubrir las expresadas deu-
das, bienes cuya valoración asciende á cuarenta y seis mil cuatro-
cientos ochenta y cuatro, noventa centavos; que tales bienes consis-
ten en materiales de una Fábrica de Fósforos, que es uno de los
bienes enajenados á Doña Basilisa (tasados los materiales) en siete
mil dollars, en una comandita imaginaria de diez y nueve mil dol-
lars en la sociedad Bolívar Arruza y Compañía; en dos mil nueve-
cientos dollars en un saldo con la misma sociedad; en nueve mil dol-
lars en unas cajas de fósforos que garantizan una deuda á la misma
razón social: en siete mil cuatrocientos veinte y seis dollars en ac-
ciones del Banco Territorial y Agrícola que garantizan otra opera-
ción de Bolívar Arruza y Co., y novecientos veinte y seis dollars en
acciones del mismo Banco á nombre de Don Pedro Bolívar que ga-
rantizan su cargo de Consejero y que las enagenaciones expresadas
se inscribieron en el Registro de la Propiedad de San Juan en los
primeros días del mes de Marzo de 1901; alegando como fundamen-
tos de derecho en cuanto á la primera petición de la súplica, los
artículos 1753, 1755, 1108 y 1727 del Código Civil: en cuanto á la
segunda los artículos 1275 y 1259 del propio Código: en cuanto á la
tercera el artículo 63 de la Ley Hipotecaria: en cuanto á la cuarta
la Orden Judicial de veinte de Marzo de 1899, solicitando por último
la condena en costas de los demandados de acuerdo con la sección
63 de la Orden General 118 serie de 1899.

2.  *Resultando*: que admitida la demanda, y decretado que se pu-
siera en conocimiento del Registrador de la Propiedad su incoacción
para que se pusiera en las respectivas inscripciones la nota corres-
pondiente, el Letrado Don Herminio Diaz, á su propio nombre y en

el de Don Gorgonio Bolívar y Doña Basilisa Bolísa evacuó el traslado que se le confirió solicitando que se declarara sin lugar la demanda, exponiendo como hechos que Don Gorgonio Bolívar ignoraba que su apoderado Sr. Arruza comprometiera su firma garanitzando los pagarés á que hace relación la demanda, cuyo importe se dedicó á negocios de la sociedad Bolivar Arruza y Compañía y no del Sr. Bolívar, y en tal ignorancia, y sin haberse formulado contra él reclamación alguna, verificó las enagenaciones relacionadas en la demanda á favor de Doña Basilisa Bolívar por valor de sesenta y tres mil pesos que recibió Don Gorgonio Bolívar de Don Herminio Diaz que afirmó ser representante de la compradora, y por la suma de dos mil á favor de Don Herminio Diaz, dando en ambos casos el Notario autorizante fé de la entrega del precio á su presencia: que consumadas las referidas ventas se presentó por el Banco Español de Puerto Rico en dos de Marzo la solicitud de embargo y se hizo á Don Gorgonio Bolívar el requerimiento á que la demanda se refiere, solicitándose el reconocimiento de los pagarés unidos á la demanda, por Don Gorgonio Bolivar para preparar la ejecución: que Don Gorgonio Bolívar declaró bajo juramento ante este Tribunal que aunque las firmas Arruza Urrutia se parecen á las que él (Don Juan Arruza) acostumbra usar no puede asegurar que sean suyas por no haberlas visto estampar; que ignora si dicho Señor Arruza contrajo la deuda por el Banco reclamada, pudiendo asegurar que Gorgonio Bolívar no debía al marcharse á Europa cantidad alguna, ni contrajo posteriormente personalmente ninguna deuda: que ignorando que debiera las cantidades que se le reclaman realizó las ventas ameritadas sin hacer depósito del precio de los bienes enagenados, ni tener que hacerlo por conservar un capital suyo, ascendente á cuarenta y seis mil cuatrocientos ochenta y cuatro pesos noventa centavos; y que, á la demanda del Banco no se acompañó certificación del acto conciliatorio, por afirmarse que Doña Basilisa Bolívar se encontraba ausente; alegando como fundamentos legales los artículos 1725, 1247, 1275, 1259 del Codigo Civil, Orden Judicial de 20 de Marzo de 1899, Sentencia del Tribunal Supremo de siete de Mayo del 97, sección 12 de la Orden General 134 serie de 1899, artículos 358, 1459 del Enjuiciamiento Civil, y sección 63 Orden General 118 serie de 1899.

3. *Resultando*: que acompañando un vale á la orden de los Sres. Bolívar Arruza y Compañía de San Juan por la suma de cuatro mil ciento noventa y dos dollars cuarenta y nueve centavos fechado en 3 de Enero de 1901 y vencedero en 28 de Febrero de 1901, firmado por Gorgonio Bolívar, endosado en 3 de Enero de 1901, por Bolívar

Arruza y Compañía á Don Carlos Armstrong de Ponce, y por éste en 20 de Febrero de 1901 á J. T. Silva Banking Compañía con diligencia de haber sido protestada por falta de pago en primero de Marzo ante el Notario de San Juan Santiago R. Palmer, se formuló por el Letrado Don Rafael Palacios en 17 de Mayo de 1901 demanda en juicio ordinario á nombre de J. T. Silva Banking and Commercial Company y Don Francisco de Paula Acuña contra Don Gorgonio Bolívar, Doña Basilisa Bolivar y Don Herminio Diaz, exponiendo como hechos, la existencia del pagarés acompañado, la de otro pagarés por la suma de tres mil seiscientos siete dollars cuatro centavos unido á diligencias ejecutivas, otorgada por Bolívar Arruza y Ca. en 18 de Diciembre de 1899, con la obligación solidaria de Gorgonio Bolívar contraida por su apoderado Don Juan de Arruza, á la orden de Don Alejandro Bozzo, endosado por éste á los Señores Samper y Co., de New York, por éstos al American Colonial Bank, y por esta Corporación, de nuevo al Señor Bozzo, y por éste á Don Francisco de Paula Acuña, siendo protestada en 17 de Diciembre de 1901 por falta de pago; el carácter de Don Juan Arruza como apoderado general de Don Gorgonio Bolívar desde 17 de Marzo de 1894, según la escritura de dicha fecha otorgada ante el Notario Sr. Guerra: y finalmente los hechos relativos á las ventas otorgadas por Don Gorgonio Bolívar á favor de Doña Basilisa Bolívar y Don Herminio Diaz que se relacionan con la demanda formulada por el Banco Español de Puerto Rico; alegando como fundamentos de derecho los artículos 532, 455, 461, 463 del Código de Comercio, 1108, 1727, 1822, 1137, 1275, 1259, 1291, No. 3 del Código Civil, artículo 33 Ley Hipotecaria, Orden Judicial de 29 de Marzo de 1899, Orden General 190 del 1899, Orden Judicial de 31 de Agosto de 1899, y regla 63, Orden General 118 de 1899; terminando con súplica de que se condene á Don Gorgonio Bolívar á pagar á J. T. Silva Banking and Commercial Company la suma de cuatro mil ciento noventa y dos dollars cuarenta y nueve centavos más los interses legales de demora: que se declaren nulas las escrituras de venta de 3 y 19 de Enero de 1901 otorgadas por Don Gorgonio Bolívar á favor respectivamente, de Doña Basilisa Bolívar y Don Herminio Diaz y las inscripciones de las mismas en el Registro de la Propiedad de San Juan, y que se declare que para hacer efectivas las sumas que Don Gorgonio Bolívar adeuda á J. T. Silva Banking and Commercial Company y Don Francisco de Paula Acuña, se proceda desde luego en cuanto á la primera y luego que recaiga ejecutoria en el ejecutivo en que está reclamada la segunda contra los bienes vendidos en las citadas escrituras.

4. *Resultando*: que el Letrado Don Herminio Diaz contestó á su propio nombre y en el de sus codemandados la citada demanda, exponiendo como hechos, además del relativo á la existencia de la socidad Bolívar Arruza y Co., constituida con un capital de cincuenta mil duros en trece de abril de 1893 por tres años, prorrogados posteriormente á la existencia de un poder conferido en 7 de Marzo del 94 por Don Gorgonio Bolívar á Don Juan Arruza que le daba facultad para tomar dinero á préstamo, pero no para constituirle en fiador de obligaciones extrañas á su firma particular; y el reconocimiento de la existencia de las obligaciones reclamadas, los mismos hechos consignados en la contestación á la demanda del Banco Español de Puerto Rico, y como alegaciones de derecho los artículos 1719, 1727, 1268, 1262, 1822, 1725, 1259 del Código Civil, 148, 267, 288, del Código de Comercio, 358 y 459 de la Ley de Enjuiciamiento Civil, Orden Judicial de 20 de Marzo de 1899, Orden General 134 de 1899 y sección 63 de la Orden General 118 serie de 1899, terminando con solicitud de que se declarara sin lugar la demanda con costas al demandante.

5. *Resultando*: qu solicitada por la representación de J. T. Silva Banking and Commercial Company y de Don Francisco de Paula Acuña la acumulación de los pleitos relacionados con los resultandos precedentes de acuerdo con los artículos 161 y 162 de la Ley de Procedimiento, se accedió á la indicada pretensión.

6. *Resultando*: que por actor y demandado en el segundo de los pleitos relacionados, se propuso prueba de documentos públicos y examen de libros de comercio, solicitando además la representación de los demandados el examen del testigo Don Miguel Mujica, y acompañando el actor á su escrito de pruebas el testimonio del pagaré á favor de Don Alejandro Bozzo relacionado en la demanda, expedido dicho testimonio por el Secretario de este Tribunal con vista del original obrante en el ejecutivo seguido por Don Francisco de Paula Acuña contra Don Gorgonio Bolívar y Bolívar Arruza y Ca., y por los demandados testimonio de escritura de aceptación y ratificación de la venta de fecha tres de Enero de 1901 relacionado con la demanda y contestación, siendo la primera de fecha de primero de Julio de 1901 otorgada por Doña Basilisa Bolívar ante el Notario de Bilbao (España) Don Francisco de Santiago Marin.

7. *Resultando*: que por actor y demandado en el primer pleito relacionado se propuso prueba de documentos públicos, examen de libros de comercio pericial y testifical, interesándose además por la representación de los demandados el reconocimiento por Doña Basilisa Bolívar de una carta que acompañó á su escrito proponiendo

pruebas, presentándose por el actor un recibo firmado por Don P. Bolívar para ser reconocido por éste y los dos pagarés unidos á los autos.

8. *Resultando*: de la prueba de documentos públicos propuesta por actor y demandado que se unió á los autos, testimonio de la escritura de poder otorgada en siete de Marzo de 1894 ante el Notario Don Mauricio Guerra Mondragon, por Don Gorgonio Bolívar á favor de Don Juan Arruza y de las escrituras de ventas de inmuebles otorgadas en tres y diez y nueve de Enero por Don Gorgonio Bolívar á favor de Doña Basilisa Bolívar y Don Herminio Diaz respectivamente.

9. *Resultando*: de la prueba pericial propuesta por ambas partes que los Peritos Don Pedro Gandía, Don Antonio Mendez y Don Juan Vidal tasaron en dos mil quinientos sesenta y tres pesos cuarenta centavos los materiales ó efectos que encontraron en la fábrica de Fósforos de Santurce, que perteneció á Don Gorgonio Bolívar según relación detallada que presentaron.

10. *Resultando*: de la prueba documental del actor que Don Gorgonio Bolívar figura en la relación de deudores presentada por la Mercantil Bolívar Arruza y Co., en fecha 22 de Marzo de 1901, en autos de suspensión de pagos de dicha Mercantil con la suma de $15.502 veinte y dos centavos, y en la relación de acreedores con un crédito de dos mil novecientos y siete dollars 17 según certificación expedida por el Secretario de este Tribunal: que el Tesorero de Puerto Rico certificó que no existe planilla suscrita por D. Gorgonio Bolívar á los efectos de la valuación de su propiedad en el año económico de 1901 y 1902: que el Registrador de la Propiedad de Caguas en seis de Septiembre de 1902 certificó que en dicha fecha no existía ninguna finca ó derecho real inscrito en el Registro á nombre de Don Gorgonio Bolívar, ni se hallaba pendiente de inscripción ningún título á su favor, y el Registrador de San Juan que Don Gorgonio Bolívar figuraba en su Registro con dos créditos hipotecarios por cuatrocientos y doscientos veinte y nueve pesos provinciales: que el Secretario del Tribunal Supremo certificó haberse presentado con fecha veinte y tres de Febrero de 1901 por Don Herminio Diaz como abogado de Don Gorgonio Bolívar escrito en dicho Tribunal desistiendo del recurso de casación interpuesto en autos ejecutivos en cobro de pesos contra la Sucesión Vilá; que se unieron á los autos tres escrituras de protesto otorgadas por Don Manuel Paniagua Oller en dos de Enero de 1901, dos de ellas como apoderado de Don J. T. Silva, y en Marzo de 1901, como representante de la sociedad

anónima J. T. Silva Banking and Commercial Company, la otra, relativas las dos primeras á dos vales á la orden por mil trescientos tres dollars setenta y cinco centavos y dos mil ochocientos cuarenta y siete dollars veinte y tres centavos otorgados por DonJuan Arruza como apoderado de Don Gorgonio Bolívar, en veinte y dos de Octubre de mil novecientos vencederos en treinta y uno de Diciembre del mismo, y la última á un vale á la orden firmado por Don Gorgonio Bolívar en tres de Enero de 1901 vencedero en 28 de Febrero de igual año, por la suma de cuatro mil ciento noventa y dos dollars cuarenta centavos, cuyo vale es objeto de este pleito; y se unió igualmente una escritura de protesto de 11 de Diciembre de 1900 otorgada por el Cajero del American Colonial Bank de Porto Rico, referente á un vale por tres mil seiscientos siete pesos cuatro centavos otorgado por Bolívar Arruza y Ca., y suscrito como fiador solidario por Juan de Arruza como apoderado de Don Gorgonio Bolívar en quince de Noviembre de 1900, vencedero en quince de Diciembre del mismo, cuyo pagaré se reclama también en estos autos: que según certificación del Secretario de este Tribunal los Señores L. Mayol y Ca., de Barcelona formularon demanda de tercería de mejor derecho en el ejecutivo seguido por Don Francisco de P. Acuña con Gorgonio Bolívar, alegándose por el demandante el derecho preferente á ser reintegrado de la suma de cuarenta y siete mil sesenta y cuatro pesetas ochenta y cinco centimos, con el pro ducto de mil cajas de fósforo embargadas en el ejecutivo, y las cuales fueron dadas en prenda, para segurar el pago de la suma ameritada, al tercerista, habiéndose el ejecutante allanado á dicha demanda; apareciendo de la misma certificación que Don Juan Arruza como gestor de Bolivar Arruza y Co., y apoderado de Don Gorgonio Bolívar reconoció ante el Juez Presidente de este Tribunal de Distrito la firma estampada al pié del pagarés de fecha 15 de Noviembre de 1900 á la orden de Don Alejandro Bozzo, reclamado en este pleito.

11. *Resultando*; de la prueba de confesión de la damandada Doña Basilisa Bolívar propuesta por el actor que ésta bajo indecisorio juramento declaró que, si bien no confirió poder á Don Herminio Diaz Navarro lo autorizó mediante carta de fecha nueve de Diciembre de 1900 para llevar su representación en todos los actos y contratos que le interesaran, incluso aceptar escrituras de venta; que ha poseído la suma de sesenta y tres mil dollars, procedentes de cantidades entregadas por su difunto marido que era marino, de regalos que le hicieron sus tios de América y de sus economías, sin tener necesidad de hacer operaciones para adquirir dicha suma; y

que tiene noticias de las compras hechas en su nombre por el Señor Diaz por la autorización dada y por haberla ratificado.

12. *Resultando*: de la prueba de libros de comerciantes propuesta por el actor, que al folio 295 del libro de acciones del Banco Territorial y Agrícola de Puerto Rico figura Don Gorgonio Bolívar en primero de Enero de mil novecientos uno con ciento noventa y dos acciones á su nombre, figurando después como único asiento el que dice: "Febrero siete, por traspasos de esas acciones al Colonial Bank, título al portador, 20, 62.—192." y que se unieron á los autos copias literales de los asientos de los libros de la sociedad Bolívar Arruza y Ca., referente á cuentas de todas clases con Don Gorgonio Bolívar.

13. *Resultando*: de la prueba de documentos privados del actor que, Don Pedro Bolívar reconoció haber expedido como apoderado de Don Gorgonio Bolívar en 28 de Febrero de 1901 un recibo por el cobro de alquileres correspondientes á dicho mes á Don Jorge Saldaña por una casa situada en Santurce.

14. *Resultando*: de la prueba testifical de dicho actor, que depusieron en el acto del juicio Don Pedro Bolívar, Don Gumersindo Suarez, Don Carlos Conde, Don Conrado Palau, Don Jorge Saldaña y Don Juan de Arruza.

15. *Resultando*: de la prueba de documentos públicos de los demandados, que los Notarios Don Santiago R. Palmer y Don Maurico Guerra certificaron que con anterioridad al tres de Enero de 1901, no se otorgó en sus respectivas Notarías ningún acta de protesta de vale ó pagarés por el Banco Español de Puerto Rico contra Don Gorgonio Bolívar; y el Secretario de este Tribunal certificó que con anterioridad á dicha fecha no existía en su archivo ningún pleito fallado ni en tramitación contra Don Gorgonio Bolívar; que se unió á los autos certificación expedida por dicha Secretaría de diversas actuaciones del ejecutivo seguido por Don Francisco de P. Acuña contra Bolívar Arruza y Ca., y Don Gorgonio Bolívar en cobro del pagaré á que se refieren estos autos: testimonio de la escritura de constitución de la Sociedad Mercantil Bolívar Arruza y Ca., otorgada en 13 de Abril de 1893 ante el Notario Señor Guerra por Don Gorgonio Bolívar, Don Miguel Mujica, Don Pedro Bolívar y Don Juan Arruza por el término de tres años á contar del primero de Abril de mil ochocientos noventa y tres, y certificación del Registro Mercantil de haber prorrogado el término de dicha sociedad en escritura de primero de Abril de 1899, otorgada ante el Notario Señor Palmer testimonio de cuya

escritura, en que consta que la prórroga fué de tres años á contar del otorgamiento, se unió también como prueba.

16. *Resultando*: de la prueba de documentos privados de los demandados que Doña Basilisa Bolívar reconoció haber escrito la carta acompañada por su Letrado á su escrito de contestación á la demanda del Banco Español y asimismo declaró que por consecuencia de tal carta la representó el Sr. Diaz Navarro en la escritura de compra-venta de tres de Enero de 1901, cuya escritura acepta y ratifica.

17. *Resultando*: de la prueba de libros de comercio ofrecida por los demandados que se unieron á los autos dos cuentas copiadas de los libros del Banco Español de Puerto Rico con Bolívar Arruza y Ca., y Gorgonio Bolívar, y una cuenta copiada de los libros de la sociedad Bolívar Arruza y Co., de dicha sociedad con el Banco Español de Puerto Rico.

18. *Resultando*: que señalado día para el juicio oral de esta causa se propuso por la representación de los demandados incidente previo de nulidad de actuaciones por no haberse acompañado certificación del acto conciliatorio y desestimado el incidente después de practicadas las pruebas de ambas partes informaron los Letrados lo que á su derecho convino.

19. *Resultando*: que en la tramitación de este juicio se han observado las formalidades legales.   Siendo Ponente el Sr. Juez Asociado Don José Tous Soto.

1. *Considerando*: que teniendo Don Juan Arruza poder de Don Gorgonio Bolívar para tomar dinero á préstamo pudo válidamente otorgar los dos pagarés cuyo importe el Banco Español reclama, obligando á su mandante al cumplimiento de la obligación de dar consignada en dichos instrumentos; sin que pueda alegarse con éxito que el mandatario aplicó las sumas obtenidas mediante la firma de los pagarés á usos de la sociedad mercantil Bolívar Arruza y Ca., de que era socio colectivo, pues un hecho sobrevenido con posterioridad á la celebración del contrato, en cuyo, hecho ninguna participación ha tenido uno de los contratantes no puede afectar sus derechos del contrato derivados, aparte de que tal hecho no se ha justificado debidamente.

2. *Considerando*: que reconocida por Don Gorgonio Bolívar en su contestación á la demanda, la existencia de los pagarés ameritados y reconocida por Don Juan de Arruza la legitimidad de las firmas en ellos estampada como apoderado de Don Gorgonio Bolívar y como gestor de la Mercantil Bolívar Arruza y Ca., y la cer-

teza de las deudas que entrañan, son las obligaciones consignadas en los mismos, por haber vencido el plazo, perfectamente válidas y exigibles.

3. *Considerando*: que reconocido por Don Gorgonio Bolívar en su contestación á la demanda de J. T. Silva Banking Co., la existencia y legitimidad del pagaré por dicha sociedad reclamado, firmado por Gorgonio. Bolívar personalmente, es también válida y exigible, por el transcurso de tiempo porque fué contraida, la obligación en dicho vale consignada.

4. *Considerando*: en cuanto á la nulidad de la escritura de venta de 3 de Enero de 1901, por razón de carecer el Sr. Diaz Navarro de poder de la compradora Doña Basilisa Bolívar para entregar el precio de la venta y aceptar la escritura, que ratificado el contrato de compraventa por la Sra. Bolívar á tenor del artículo 1259 del Código Civil no hay para que discutir si podía ó no el Sr. Diaz Navarro aceptar dicha escritura sin apoderamiento en forma, pues dicha ratificación como el actor reconoce, subsana el defecto que en la representación legal obstentada por el Sr. Diaz Navarro pudiera existir.

5. *Considerando*: en cuanto á la nulidad del citado contrato y del celebrado en 19 del mismo mes y año entre Don Herminio Diaz y Don Gorgonio Bolívar proveniente de no tener causas dichos contratos, que expresándose en los mismos que los compradores pagaron una suma de dinero por las cosas vendidas, ésta es la causa, á tenor del artículo 1274 del Código Civil; causa que, por otra parte, se presume aunque no se expresa, mientras no se pruebe lo contrario, según el artículo 1277 del mismo Código; y el actor no ha probado ni tratado de probar que fuera incierta la entrega del precio de que dá fé el Notario en ambos contratos.

6. *Considerando*: que no existiendo nulidad en los contratos motivo en que se funda la pretensión de nulidad de la escritura en que se consignaron, no hay términos hábiles para declarar tal nuli· dad.

7. *Considerando*: en cuanto á la petición de que los bienes enagenados en las escrituras de referencia respondan de las deudas reclamadas, á tenor de la Orden Judicial de 20 de Marzo de 1899, que la parte actora no puede invocar la presunción de simulación que establece el número 2 de dicha Orden Judicial, por haber dado el Notario fé de la entrega del precio de las ventas en las escrituras respectivas, y por consiguiente, está obligada á probar que la simulación ha existido en dichos contratos, efectuados por Gorgonio Bo-

lívar en fraude de sus acreedores, con la connivencia de los compradores.

8. *Considerando*: que la prueba aducida á ese efecto es insuficiente para justificar la simulación ó el fraude, pues el hecho de que Don Pedro Bolívar en 28 de Febrero de 1901, ó sea después del 3 de Enero de 1901, en que Don Goronio Bolívar vendió á su hermana Doña Basilisa Bolívar, entre otros inmuebles, la casa ocupada en Santurce por Don Jorge Saldaña, apareciera expidiendo á éste un recibio por alquileres de dicha casa como apoderado de Don Gorgonio Bolívar, ni en sí mismo considerado es indicio de la simulación de la venta, habida consideración al poco tiempo transcurrido desde la misma, ni siendolo podría perjudicar á Don Gorgonio Bolívar ni á Doña Basilisa Bolívar por tratarse de un acto completamente extraño á ellos; y por este mismo último motivo, tampoco es indicio suficiente de simulación el hecho de presentarse por Don Herminio Diaz escrito á nombre de Don Gorgonio Bolívar ante el Tribunal Supremo en fecha 23 de Febrero de 1901, ó sea, después del tres de Enero, desistiendo del recurso de casación establecido en autos ejecutivos en cobro de un crédito hipotecario contra la sucesión Vilá por Don Gorgonio Bolívar que lo cedió á su hermana Doña Basilisa en escritura de dicha fecha, tanto más cuanto que, tal hecho puede tener su explicación en el deseo del Letrado de evitar á su cliente dilaciones y gastos acreditando en autos la cesión del crédito hipotecario reclamado.

9. *Considerando*: que el hecho de ser los compradores en las ameritadas escrituras, la una hermana del vendedor y el otro su abogado, no entraña tampoco indicio de simulación; y si bien es extraño que la viuda de un maquinista de marina solamente con la herencia de su consorte, regalos de sus tíos de América y sus economías pueda reunir sesenta y tres mil dollars y destinarlos á la adquisición de propiedades en distintas tierras extrangeras, tal extrañeza no puede ejercer influencia alguna en el ánimo del juzgador ante el hecho positivo y no controvertido de la entrega en efectivo de la ameritada suma en el acto del otorgamiento.

10. *Considerando*: que no desestimándose en absoluto las pretensiones de ninguna de las partes, conforme á la aquidad debe cada parte satisfacer las costas causadas á su instancia.

Vistos los artículos citados y los de aplicación de la Ley de Enjuiciamiento Civil y Orden General número 118, serie de 1899.

*Fallamos*: que declarando en parte con lugar y desestimando en otras las demandas acumuladas, debemos condenar y condenamos á Don Gorgonio de Bolívar á satisfacer al Banco Español de

Puerto Rico la suma de veinte mil cuatrocientos dollars, á que asciende los dos pagarés reclamados é intereses vencidos y que se venzan á razón del uno por ciento mensual desde el respectivo vencimiento de los mismos hasta el completo pago y á satisfacer también á la Corporación J. T. Silva Banking and Commercial Company la suma de cuatro mil ciento noventa y dos dollars cuarenta y nueve centavos importe del vale acompañado con la demanda é intereses de demora á razón del seis por ciento desde el siguiente al vencimiento de la obligación hasta su pago; y debemos declarar y declaramos sin lugar la petición de nulidad de las escrituras de compra-venta otorgadas en tres y diez y nueve de Enero de 1901 ante el Notario de San Juan Don Santiago R. Palmer por Don Gorgonio Bolívar á favor de Don Herminio Diaz por su derecho propio la segunda y como apoderado de Doña Basilisa Bolívar la primera y sin lugar también la petición de que los bienes enajenados en dichas escrituras respondan de las deudas reclamadas en esta demanda, sin especial condenación de costas, y cancélense las correspondientes anotaciones en el Registro de la Propiedad.    Así por esta nuestra sentencia, lo pronunciamos, mandamos y firmamos.—Juan Morera Martínez, Frank H. Richmond, Jose Tous Soto.''

*Resultando* que contra la anterior sentencia interpusieron los demandantes recurso de apelación que les fué admitido, y, elevados los autos, previa citación y emplazamiento de las partes, se personaron en esta Corte Suprema, evacuaron el trámite de instrucción que se les confirió y haciendo uso, de común acuerdo, del derecho que les otorga el artículo 875 de la Ley de Enjuiciamiento Civil, presentaron sus escritos de alegación en derecho.

Abogado de los apelantes: *Sr. Sarmiento.*

Abogado de los apelados: *Sr. Diaz Navarro.*

El Juez Asociado Sr. Figueras, después de exponer los hechos anteriores, emitió la opinión del Tribunal.

*Aceptando* los fundamentos de hecho de la sentencia apelada, y

*Resultando* que Don Pedro Bolívar hermano y apoderado de Don Gorgonio, declaró en 13 de Marzo de 1903 que su hermana Doña Basilisa tenía parientes ricos en América,

ignora si éstos la reglaron cantidades de importancia, que Don Gorgonio vino de España en 1900 y se hospedó en la casa del declarante que es propiedad de aquél, que vino á ver sus intereses y á renovar la contrata de la casa de comercio Bolívar Arruza y Co., que estudió la situación de ésta pasando inventarios y enterándose de ellos; que Bolívar Arruza y Ca., debía á L. Mayol y Co., de Barcelona, una cantidad que garantizó Don Gorgonio con 2000 cajas de fósforo, entregadas á uno de la casa de Gilet, de Ponce.

*Resultando* que al folio 206 en que figura la cuenta de préstamo del Banco Español con Bolívar Arruza y Co., de la que es socio comanditario Don Gorgonio, consta lo que éste adeudaba á aquella institución de crédito por las obligaciones fechadas en diez y treinta y uno de Diciembre de 1900 y que son también objeto de la actual reclamación.

*Resultando* que el vale suscrito por Don Gorgonio Bolívar á la orden de los Sres. Bolívar Arruza y Co., por la cantidad de cuatro mil ciento noventa y dos dollars cuarenta y nueve centavos y que por endosos vino á poder de la razón social J. T. Silva Banking and Commercial Company, lleva fecha de 3 de Enero de 1901, que es la misma en que se otorgó por Don Gorgonio Bolívar la venta á su hermana Doña Basilisa de trece fincas y dos créditos hipotecarios por valor de sesenta y tres mil dollars; folios 1 y 244 de los autos.

*Resultando* que en el acto del juicio oral, 13 de Marzo de 1903, declararon Don Gumersindo Suárez y Don Conrado Palau manifestando que Don Gorgonio Bolívar les habló personalmente como consejero del Banco Español para contratar con éste un préstamo de veinte mil pesos m. p., con el fin de construir una casa, y que efectivamente se construyó en Santurce una, dice Suarez, y varias, dice el testigo Palau; folios 397 y siguientes del proceso.

*Resultando* que en el mismo acto Don Carlos Conde manifestó que Don Gorgonio Bolívar le instó para que le proporcionase una entrevista con Don Antonio Sarmiento

(Secretario del Banco) para hablar de la operación que tenía pendiente con el Banco y que sabe que Bolívar ofreció en garantía de la operación que proyectaba, una hipoteca que tenía á su favor constituida por un tal Vilá.

*Resultando* que entre lo vendido por Don Gorgonio á su hermana Doña Basilisa, en 3 de Enero de 1901, figura con el número 15, un crédito hipotecario por veinte mil pesos de moneda provincial que le adeudaba Jaime Vilá cuyo crédito, que era de Bolívar Arruza y Ca., se traspasó por valor en cuenta á Don Gorgonio Bolívar con posterioridad al 19 de Enero de 1901.

*Resultando* que Don Gorgonio Bolívar no depositó en ningún establecimiento Bancario, ni en otro cualquiera, el importe de sus obligaciones, y el total de los bienes que manifestó conservaba para cubrirlas, y á que se refiere el primer resultando de la sentencia recurrida, ha quedado reducido á la cantidad que arroja la tasación pericial contenida en en el noveno resultando de la referida sentencia.

*Resultando* que á petición del actor se tomó anotación de embargo sobre una finca de catorce cuerdas con deducción de ocho mil trescientos catorce metros superficiales y sobre otra de cuatro cuerdas más ó menos de terrenos, por lo que pueda corresponder á Don Gorgonio Bolívar, en la liquidación de la razón comercial G. Bolívar & Co.; y á los efectos del artículo 165 del Reglamento para aplicación de la Ley Hipotecaria, se estableció que la primera respondería de diez mil pesos de principal y mil para costas y la segunda de quinientos dollars de principal; folios 89 y 123.

*Resultando* que la carta en que Doña Basilisa Bolivar y Alvarez autoriza al abogado Don Herminio Diaz Navarro, dice literalmente así: "España Bilbao, Munguia 9 de Diciembre de mil novecientos. Señor Don Herminio Diaz Navarro, Abogado, San Juan.—Muy Sr. mío: No tengo el gusto de conocer á usted pero por referencias de personas que le conocen y sabiendo las condiciones de caballerosidad que le adornan: que ejerce usted la profesión en esa ciudad y que

para darle mi representación no es preciso el otorgamiento de poder, según leyes que ahora rigen en esa Isla, me permito por medio de la presente nombrarle á usted mi representante para que intervenga en todos los asuntos judiciales y extrajudiciales que yo tenga ó pueda tener en esa isla y los dirija con su acostumbrada discreción é interés.   No dudando que aceptará usted esta designación, quedo de usted atenta y S. S. Q. B. S. M.—Basilisa de Bolívar.

*Resultando* que la cédula que exhibió dicha Sra. al otorgar la escritura de aceptación y ratificación de la compra á que se refiere la última parte del Resultando sexto de la sentencia apelada, es de undécima clase; folio 125.

*Aceptando* los fundamentos de derecho 1, 2, 3, y 4 de la sentencia apelada, y

*Considerando* que la expresión de una causa falsa en los contratos dá lugar á la nulidad, si no se probase que estaban fundados en otra verdadera y lícita, según el artículo 1276 del Código Civil antiguo y 1243 del Reformado.

*Considerando*: que si no se puede negar que exite la causa del de venta celebrado en 3 de Enero de 1901 entre Don Gorgonio Bolívar y Alvarez y su hermana Da. Basilisa de los propios apellidos, puesto que el Notario dá fé de que ésta pagó sesenta y tres mil dollars por las cosas vendidas, artículo 1274 del Código Civil, no se ha intentado probar como correspondía, después de la negación, los medios de que se valió Don Herminio Diaz Navarro para reunir aquí esa suma, toda vez que en la carta de autorización nada se le dice ni se habla de la compra, ni se ha indicado siquiera la forma ó manera como vino esa importante cantidad á esta ciudad, remitida desde España como de la propiedad de la compradora para que fuera realmente el precio de una venta efectiva y entrara positivamente en la propiedad del vendedor, en cuyo caso hubiera podido éste manifestar en el acto del requerimiento que conservaba en su poder cantidad suficiente para cubrir sus obligaciones, ya que tambien expresó que no depositó en parte alguna el importe de

ellas, variando de este modo su situación económica posterior y por consiguiente el aspecto jurídico que hoy presenta el contrato realizado.

*Considerando* que esos antecedentes, unidos á la manera vaga é inverosimil con que explica Doña Basilisa los medios de reunir esa fortuna, cuando sólo usa cédula de undécima clase, y la extrañeza que causa su determinación inexplicable de adquirir hoy tantas fincas y créditos en esta tierra, para ella extranjera, deciden el ánimo á hacer la afirmación de que sólo predominó en este contrato la intención de que los acreedores del vendedor, no pudieran hacer efectivos sus créditos en los bienes aparentemente vendidos, y esto viene á producir un contrato simulado, según la Orden Judicial de 5 de Marzo de 1899.

*Considerando* que para mejor comprender el espíritu de dicha orden, hay que acudir al preámbulo que la precede y en él categóricamente se expresa que los contratos con el indicado propósito celebrados, ''son perniciosos para la vida agrícola y comercial del país, porque minándolo por su base, destruyen en absoluto el crédito de esas dos únicas fuentes de riqueza, á las que de tal modo se les hará imposible desarrollarse y vivir'' y se añade además ''que es inmoral y se hace por ello necesario hacer más eficaz la prohibición que en ese punto ya contiene nuestra ley;'' de donde resulta que hay que entender y aplicar en un sentido estricto la referida disposición, para evitar los males que la misma indica.

*Considerando* que el mismo pensamiento dominó en el otro contrato de venta de un solar celebrado el 19 de Enero de 1901, entre Don Herminio Diaz Navarro como comprador y Don Gorgonio Bolívar como vendedor, puesto que del conjunto de esas operaciones resulta la insolvencia del último y por tanto el perjuicio de los acreedores y han de seguir ambos la suerte que la prueba y el derecho les señalan.

*Considerando* que la simulación de dicho contrato es in-

discutible y para llegar á ese convencimiento basta pensar que Don Gorgonio Bolívar tenía conocimiento de sus deudas con el Banco Español porque así se lo demostraban los libros de Bolívar Arruza y Ca., de cuya sociedad es Comanditario; tenía también ese conocimiento por las gestiones que él mismo hizo cerca de dos Consejeros de dicha Institución para conseguir el préstamo de 20,000 pesos y además no podía ignorar la existencia de otras deudas en su contra, puesto que la que hoy reclama, la razón social J. T. Silva Banking and Commercial Company, fué contraida por el mismo Bolívar en 3 de Enero de 1901 día precisamente en que otorgó la escritura de venta á su hermana Doña Basilisa y otras acreencias dieron motivo á protestos anteriores á esa fecha y cuyos actos conocía igualmente, porque se entendieron con sus apoderados, y con ese conocimiento perfecto de su verdadera situación económica, surgen en la mente de Bolívar los antecedentes del plan que luego se desarrolló.

*Considerando* que la prueba vino á demostrar que después de la venta de Don Gorgonio Bolívar á su hermana ocurrieron hechos expontáneos que demuestran una vez más la simulación del contrato, y estos son el de haber cobrado su hermano Don Pedro, como apoderado del aquél los alquileres de Enero y Febrero de una casa que ocupaba Don Jorge Saldaña y que había dejado de ser de la propiedad del poderdante si fué real y efectiva la venta de 3 de Enero de 1901; la manifestación que en 13 de Marzo de 1901 hizo en juicio dicho Don Pedro, de que vivía en una casa de la propiedad de su hermano, cuando á ser cierto el contrato, ya esa casa en esa fecha pertenecía á Da. Basilisa; el desistimiento de un recurso en 13 de Febrero de 1901 hecho á nombre de Don Gorgonio Bolívar por el mismo Letrado que con autorización de dicha Señora intervino en el contrato representándola y entregando á su nombre el precio de la venta, cuando dicho recurso se interpuso en un pleito

en cobro de un crédito hipotecario, y á ser cierta la venta referida, ya ese crédito pertencía á Doña Basilisa y en tal hipótesis sólo á su nombre pudo desistirse de dicho recurso; el traspaso que de esa acreencia se hizo en los libros de Bolívar Arruza y Co., á favor de Don Gorgonio, en fecha muy posterior á su venta, y por último el ofrecimiento hecho por dicho Bolívar al Secretario del Banco Español, Don Antonio Sarmiento, de ese mismo crédito como garantía de la operación que aquél proyectaba, garantía que no podía tener otro fin que el arreglo de estos pleitos, ya iniciados, porque las obligaciones de deber del Banco estaban garantizadas.

Así se deduce de la declaración que en 13 de Marzo de 1903 prestó Don Carlos Conde; detalles todos esos que por su propia sencillez y naturalidad están proclamando que en la conciencia de Don Gorgonio, en la de su hermano y apoderado Don Pedro, y en la de su abogado, las fincas y créditos vendidos no habían pasado realmente á ser de la verdadera propiedad de Doña Basilisa, sino que por contrario pertenecían al aparente vendedor de los mismos, y por eso se hacían esas manifestaciones y se determinaban actos que estaban en perfecta armonía con la verdadera realidad de las cosas.

*Considerando* que no arroja menos luz sobre la idea de la simulación la lectura de la carta de autorización que se ha insertado en uno de los resultandos y que se fecha en Munguia, Bilbao, (España) el 9 de Diciembre de 1900, carta que en absoluto silencia los medios de proveerse el mandatario de los fondos necesarios para realizar el contrato; los pocos días transcurridos desde esa fecha al 3 de Enero de 1901, en que se otorgó la escritura de venta por precio recibido de sesenta y tres mil dollars equivalentes casi cien mil pesos españoles; el silencio de Don Gorgonio Bolívar sobre esa importante suma al ser requerido en once de Marzo del citado año, suma que de ser cierta la venta hu-

biera conservado en su poder, ó por lo menos constaría empleada en bienes de su exclusiva propiedad, y la certificación del Tesorero de Puerto Rico expresiva de que de los antecedentes que corresponden á la valuación de la propiedad del año económico de 1901 á 1902 no aparece presentada planilla suscrita por Don Gorgonio Bolívar Alvarez; son todos esos hechos probatorios del estado de insolvencia en que conscientemente procuró colocarse dicho Bolívar para eludir el pago de las obligaciones que anteriormente tenía contraídas.

*Considerando* que no puede alegarse en favor de la solvencia de Don Gorgonio Bolívar las anotaciones de embargo que en estos autos aparecen tomadas en el Registro de la Propiedad sobre dos fincas, porque hay que tener en cuenta que están inscritas á nombre de G. Bolívar y Ca., y que están, por tanto, comprometidas en esa sociedad, de que es Comanditario Don Gorgonio, que está hoy en liquidación y no alcanza el embargo, y en su día, el cobro, más que á lo que pueda corresponder al socio deudor por beneficios ó liquidación, según el artículo 174 del Código de Comercio.

*Considerando* que fudándose el contrato celebrado el 3 de Enero de 1901 en una causa que la prueba ha demostrado que es falsa y no habiéndose intentado siquiera probar por los demandados á quien correspondía, que se fundó en otra verdadera y lícita y teniendo éste y el celebrado el 19 del mismo año, el mismo pensamiento y proponiéndose el deudor en ambos el mismo fin, hay que convenir que son nulos y no producen efecto alguno, como son también nulos los títulos inscritos en el Registro de la Propiedad, y nulas por consiguiente las inscripciones que dichos títulos hayan causado, porque la inscripción, según el artículo 33 de la Ley Hipotecaria, no convalida los actos y contratos que sean nulos con arreglo á las leyes.

*Considerando* que una vez que los acredores hayan probado la simulación, pueden para cobrar, ó para exigir que

se les garanticen sus créditos, dirigir su acción, como se ha hecho en estos juicios, contra su deudor y contra el que posea á título de dueño los bienes de aquél, siendo en estos casos ese poseedor responsable de lo adeudado por el deudor directo, hasta donde alcance el valor de dichos bienes; según así se determina en el artículo 3 de la citada Orden Judicial de 5 y 20 de Marzo de 1899.

*Considerando* que no es de aplicación á este caso la sentencia de 2 de Marzo de 1900 que de este Tribunal se cita en el escrito de alegación en derecho presentado por la parte recurrida.

*Considerando* que las costas del juicio deben imponerse á los demandados y las del recurso sin especial condenación.

*Vistos* el artículo 1259 del Código Civil ó 1226 del Reformado y los demás que en esta sentencia se citan con las Ordenes Judiciales de 5 y 20 de Marzo de 1899, la Ley de la Asamblea Iegislativa de esta Isla aprobada en 12 de Marzo de 1903, la Orden General Número 118 serie de 1899 y los artículos 358, 364 y 371 de la Ley de Enjuiciamiento Civil.

*Fallamos* que confirmando en lo conforme y revocando en cuanto no lo esté la sentencia apelada debemos condenar y condenamos á Don Gorgonio Bolivar y Alvarez á que pague las siguientes deudas: al Banco Español de Puerto Rico la de veinte mil cuatrocientos dollars más los intereses vencidos y que se venzan á razón del doce por ciento anual; á la razón social J. T. Silva Banking and Commercial Company, la de cuatro mil ciento noventa y dos dollars cuarenta y nueve centavos, más los intereses legales desde que cayó en mora; declaramos nulo y de ningún valor ni efecto los contratos de venta, las escrituras de 3 y 19 de Enero de 1901, y las inscripciones que dichos contratos hayan causado en el Registro de la Propiedad, declaramos que para hacer efectivas las sumas que Don Gorgonio Bolívar adeuda al Banco Español de Puerto Rico, á J. T. Silva Banking and Commercial Company, como la que se refiere á Don

Francisco de P. Acuña, se proceda desde luego en cuanto á las dos primeras y luego que recaiga ejecutoria en el ejecutivo en que está reclamada, en cuanto á la última, contra los bienes á que se contraen las mencionadas escrituras, é imponemos las costas del juicio á los demandados y las del recurso sin especial condenación.

Jueces concurrentes: Sres. Presidente Quiñones y Asociados Hernández, Sulzbacher y MacLeary.