MANUEL MENDÍA MORALES, demandante y apelante, v. JUAN
B. ARZUAGA, MIGUEL MOCOROA ARZUAGA, CEFERINO ARZUAGA
PEÑAGARÍCANO, EUGENIO MURUA PEÑAGARÍCANO, JOSÉ MA-
RÍA ARZUAGA BERAZA, ROSARIO DABÁN, SUCESIÓN DE PEDRO
ARZUAGA BERAZA, ENRIQUE ADSUAR, "SOBRINOS DE EZ-
QUIAGA INC.", SOBRINOS DE EZQUIAGA S. EN C., demanda-
dos y apelados.

No. 4141.—*Visto:* Junio 23, 1927. *Resuelto:* Julio 28, 1927.

1. SOCIEDADES—DISOLUCIÓN, LIQUIDACIÓN *(Settlement)* Y ARREGLO DE CUENTAS—
CAUSAS DE DISOLUCIÓN—CLÁUSULAS EN EL CONTRATO SOCIAL RELATIVAS A LA
DISOLUCIÓN—CLÁUSULAS IMPOSIBLES DE CUMPLIR—EFECTO.—Si se concluye
que una cláusula de un contrato de sociedad mercantil daba poder a un socio
para hacer que la sociedad continuara no obstante haberse vencido el término
social y negarse a ello la mayoría, tal cláusula sería imposible de cumplir y
por consiguiente nula.

2. SOCIEDADES—DISOLUCIÓN, LIQUIDACIÓN *(Settlement)* Y ARREGLO DE CUENTAS—
CAUSAS DE DISOLUCIÓN—CLÁUSULAS EN EL CONTRATO SOCIAL RELATIVAS A LA
DISOLUCIÓN—EN GENERAL.—Cuando surge una situación no prevista o regu-
lada en forma tal que es imposible de cumplir de acuerdo con el contrato
social, debe recurrirse para resolverla a la ley, a los principios generales de
derecho, a la equidad y a los precedentes o costumbres del lugar.

3. SOCIEDADES—DISOLUCIÓN, LIQUIDACIÓN *(Settlement)* Y ARREGLO DE CUENTAS—
CAUSAS DE DISOLUCIÓN—VENCIMIENTO DEL TÉRMINO SOCIAL Y SUS PRÓRRO-
GAS.—Vencido el término fijado en un contrato social y sus prórrogas, la
sociedad como tal, como negocio en pie, queda disuelta. Sólo continúa a los
efectos de la liquidación.

4. MARCAS DE FÁBRICA Y NOMBRES COMERCIALES *(Trade-names)* Y COMPETENCIA
INJUSTA *(Unfair Competition)*—USURPACIÓN *(Infringement)* Y COMPETENCIA
INJUSTA—QUÉ CONSTITUYE COMPETENCIA ILEGAL—DERECHO AL USO DE NOM-
BRES—NOMBRES SOCIALES O COMERCIALES.—Cuando puesta una sociedad en
liquidación parte de los socios se apropia del nombre social para nuevos nego-
cios en forma tal que introduce confusión, dichos socios pueden ser restrin-
gidos en el uso de aquél mediante *injunction*. Del nombre debe disponerse
en la liquidación para beneficio de la misma.

RESOLUCIÓN de *Pablo Berga,* J. (San Juan), declarando sin lugar
peticiones de *injunction* preliminar y con lugar solicitud sobre
nombramiento de síndico. *Revocada* en cuanto negó el *injunc-
tion* preliminar sobre el uso de nombre social y *confirmada* en
cuanto a sus demás pronunciamientos.

*O. B. Frazer, R. Castro Fernández* y *Tomás Bernardini,* abogados
del apelante; *J. Texidor* y *De la Torre & Ramírez,* abogados de
los apelados.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del
tribunal.

Manuel Mendía entabló demanda en la Corte de Distrito de San Juan contra Juan B. Arzuaga, Miguel Mocoroa Arzuaga, Ceferino Arzuaga Peñagarícano, Eugenio Murua Peñagarícano, José María Arzuaga Beraza, Juan José Arzuaga Beraza, Rosario Dabán viuda de Arzuaga, Sucesión de Pedro J. Arzuaga Beraza, Enrique Adsuar, Sobrinos de Ezquiaga, Inc., y Sobrinos de Ezquiaga, S. en C., sobre rendición de cuentas, nombramiento de síndicos, liquidación de sociedad e *injunction,* alegando en ella, en resumen, que el 30 de diciembre de 1916 Pedro J. Arzuaga y el demandante, como gestores, y Eugenio Murua y Ceferino Arzuaga, como comanditarios, organizaron, de acuerdo con las leyes de Puerto Rico, la sociedad "Sobrinos de Ezquiaga, S. en C.," como sucesora de otra de igual nombre y por término de cinco años; que al vencerse el término, los mencionados socios organizaron otra sociedad bajo la misma razón y como sucesora y continuadora de ella, por término de cuatro años; que habiendo muerto el gestor Arzuaga, el 18 de abril de 1922, o sea dentro del término de la sociedad, se reorganizó ésta conservando la misma razón social, siendo gestores el demandante, Juan B. Arzuaga y Miguel Mocoroa, y comanditarios Juan José Arzuaga, Eugenio Murua, Ceferino Arzuaga y José María Arzuaga, fijándose el término de duración hasta el 31 de diciembre de 1925; que al vencerse este término, se prorrogó por seis meses, esto es, hasta el 30 de junio de 1926, bajo las mismas cláusulas y condiciones, siendo la vigésima de dichas cláusulas como sigue:

"Estipulan los contratantes que llegado el momento de disolverse la sociedad que ahora se constituye por expiración de su plazo o por cualquiera otra causa, el activo y pasivo de la misma, así como el total volumen en los negocios, se trasmitirán a cualquiera nueva sociedad que bajo igual razón social se forme, para que sea continuadora y sucesora de la extinguida, realizándose tal trasmisión con el determinado propósito de que dicha sociedad no sea puesta en liquidación definitiva, sino en el caso de una absoluta imposibilidad de continuar sus operaciones por medio de una sucesora; y

para tal caso de liquidación definitiva se requerirá el voto unánime de todos los socios, así gestores como comanditarios;''

que los socios de Sobrinos de Ezquiaga, S. en C., no han acordado la liquidación de la sociedad conforme a dicha cláusula; que la sociedad tenía y tiene un gran negocio establecido con representación de compañías de seguros, de vapores, de tubería y materiales de construcción, de abonos, etc., etc., siendo el capital invertido medio millón de dólares, correspondiendo al demandante ciento treinta mil; que el 1 de julio de 1926 los demandados Juan B. Arzuaga y Miguel Mocoroa se negaron a tomar parte alguna en la gestión de los negocios de ''Sobrinos de Ezquiaga, S. en C.,'' rehusaron reconocer los actos del otro gestor, el demandante, y trataron de nombrar como liquidador al demandado Enrique Adsuar en violación de la citada cláusula vigésima de la escritura social; que el demandado Adsuar ha tratado de interrumpir al demandante como gestor de ''Sobrinos de Ezquiaga, S. en C.,'' ha usurpado las funciones de administrador y ha anunciado al público que él es el síndico liquidador, radicando una demanda de *injunction* contra el demandante para que se le prohiba ejercer sus derechos de gestor; que entre el activo de ''Sobrinos de Ezquiaga, S. en C.,'' está el nombre social (*good will*), que ha existido por más de cien años, y varias agencias, todo lo cual tiene un valor de muchos miles de dólares; que el 1 de julio de 1926 los demandados Juan B. Arzuaga, Miguel Mocoroa y José María Arzuaga constituyeron la corporación demandada ''Sobrinos de Ezquiaga, Inc.,'' bajo las leyes de Puerto Rico, con domicilio en la calle de Allen No. 17 que es el propio domicilio de ''Sobrinos de Ezquiaga, S. en C.,'' siendo su propósito apoderarse del nombre, *good will* y agencias de ''Sobrinos de Ezquiaga, S. en C.,'' en perjuicio del demandante.

Siguen otras alegaciones relativas a asientos fraudulentos en los libros de ''Sobrinos de Ezquiaga, S. en C.,'' hechos en contra del demandante, y continúa la demanda ex-

presando que debido a la discordia entre los socios, la marcha de los negocios de "Sobrinos de Ezquiaga, S. en C.," está detenida y el valor de su nombre social disminuye y la situación es tal que "si continúa sin intervención judicial, existe el peligro de la insolvencia de dicha compañía, la cual es hoy toda completamente solvente" y que "la conservación y preservación del activo de dicha sociedad requiere el nombramiento de uno o más síndicos para continuar los negocios, realizar el activo incluyendo el nombre, *good will,* y agencias, y liquidar las operaciones de la sociedad;" que el demandante no tiene medios para fiscalizar las actuaciones de la nueva sociedad "Sobrinos de Ezquiaga, Inc.," y que si la corte, "como corte de equidad no restringe a dicha corporación demandada . . . en el uso del nombre Sobrinos de Ezquiaga, Inc., y sus actos en solicitar las agencias y clientela de la sociedad demandada, Sobrinos de Ezquiaga, S. en C., dicha sociedad y el demandante, como socio gestor de la misma, sufrirán perjuicios irreparables."

Entre las diferentes peticiones que la súplica de la demanda contiene están las que siguen:

"(c) Que se expida un auto de *injunction* preliminar *pendente lite* y en su día un *injunction* permanente, prohibiendo al demandado Enrique Adsuar actuar como liquidador de Sobrinos de Ezquiaga, S. en C., o dar aviso a los clientes de dicha sociedad de que él es tal liquidador.

"(d) Que se expida asimismo un *injunction* preliminar *pendente lite,* y en su día un *injunction* permanente, prohibiendo a la corporación demandada Sobrinos de Ezquiaga, Inc., y a los demandados Juan B. Arzuaga, Miguel Mocoroa y José María Arzuaga el usar el nombre de Sobrinos de Ezquiaga o alguno tan parecido que origine confusión, y solicitar los negocios o agencias de dicha sociedad Sobrinos de Ezquiaga, S. en C., en representación o como sucesora de Sobrinos de Ezquiaga, S. en C.

"(e) Que para el fin de conservar y preservar el activo y los negocios de la sociedad Sobrinos de Ezquiaga, S. en C., se nombren uno o más Síndicos autorizados para tomar posesión del activo de dicha sociedad y encargarse de dichos negocios, para continuar,

como un negocio en pie, los negocios hasta liquidar y distribuir el capital restante bajo la dirección de esta Hon. Corte.

    *      *      *      *      *      *      *

"(g) Que se conceda al demandante cualquier otro remedio además en la discreción de la Hon. Corte."

Los demandados Sobrinos de Ezquiaga, Inc., Juan B. Arzuaga, Miguel Mocoroa y José María Arzuaga comparecieron a los efectos de mostrar causa en relación con el nombramiento de síndicos y la petición de *injunction* preliminar y alegaron que la demanda no aducía hechos suficientes; que se habían acumulado indebidamente partes demandadas y acciones diversas; que la sociedad mercantil Sobrinos de Ezquiaga, S. en C., quedó disuelta el 30 de junio de 1926 y fué puesta en liquidación por el voto de la mayoría de sus socios el 1 de julio de 1926; que Sobrinos de Ezquiaga, Inc., es una corporación debidamente inscrita y con derecho exclusivo a usar de tal nombre; que los demandados Arzuaga y Mocoroa se han negado después del 1 de julio de 1926 a realizar actos como gestores de la sociedad Sobrinos de Ezquiaga, S. en C., porque esta sociedad se hallaba extinguida; que Sobrinos de Ezquiaga, Inc., realiza sus negocios sin ostentar el carácter de sucesora de Sobrinos de Ezquiaga, S. en C.; que el *good will* de Sobrinos de Ezquiaga, S. en C., permanece en dicha sociedad en liquidación; que en relación con el nombramiento de síndicos se hallan interesados Ceferino Arzuaga, Eugenio Murua, Juan José Arzuaga y Rosario Dabán, que residen en España; que no cabe nombrar un síndico por tener la ley previsto y resuelto para el caso el nombramiento de liquidador, y que el demandante viene obstaculizando la liquidación de Sobrinos de Ezquiaga, S. en C., oponiéndose a la misma y negando al liquidador nombrado su concurso para tal liquidación y que al venir a solicitar el nombramiento de síndico lo hace fuera de equidad.

Alegaciones similares hizo el demandado Enrique Adsuar al comparecer para mostrar causa en relación con el nom-

bramiento de síndico y el *injunction* preliminar, y así trabada la contienda las indicadas cuestiones previas quedaron sometidas a la decisión de la corte. Se practicó una amplia prueba y finalmente la corte, el 2 de agosto de 1926, declaró sin lugar las solicitudes de *injunction* contra "Sobrinos de Ezquiaga, Inc.," y contra Enrique Adsuar y "con lugar la solicitud sobre nombramiento de síndicos, pero con el carácter de liquidadores, para administrar únicamente el caudal común y percibir los créditos de la compañía, extinguir las obligaciones contraídas de antemano según vayan venciendo, y realizar las operaciones pendientes hasta la liquidación definitiva y división del haber social conforme las disposiciones del Código de Comercio."

La corte ordenó que su resolución fuera notificada a las partes para que sometieran nombres. Así se hizo. Los demandados Juan B. Arzuaga, José María Arzuaga y Miguel Mocoroa, acataron la resolución y propusieron para síndico-liquidador a Enrique Adsuar. No consta lo que hiciera el demandante. Aseguran los apelados en su alegato que puso el nombre de José María González en un papel sin firma. El 7 de agosto, 1926, la corte nombró a José María González por el demandante y a Enrique Adsuar por los demandados, síndicos liquidadores de Sobrinos de Ezquiaga, S. en C., con las facultades que se expresan y que son las que determina el Código de Comercio. Ambos síndicos aceptaron y juraron sus cargos y la corte les expidió las correspondientes cartas de administración.

Las anteriores actuaciones de la corte son las que el demandante pretende que se revisen por ésta su apelación.

[1] Todo depende del alcance que se dé a la cláusula vigésima del contrato de sociedad de Sobrinos de Ezquiaga S. en C., que transcribimos al resumir los hechos alegados en la demanda.

El demandante en un amplio y bien trabajado alegato sostiene que no habiéndose obtenido, como demostró la prueba que no se obtuvo, el voto unánime de los socios de Sobrinos

de Ezquiaga, S. en C., jamás pudo la sociedad llevarse a una liquidación definitiva que fué lo que hizo la mayoría de los socios en la reunión de 1 de julio de 1926 al nombrar liquidador al demandado Adsuar y lo que prácticamente hizo también la corte al declarar con lugar la solicitud del demandante, pero nombrando no síndicos que sostuvieran en pie el negocio de la sociedad para transmitirlo a la nueva que se formara para hacerse cargo de él, sino síndicos-liquidadores que actuaran en armonía con los preceptos del Código de Comercio. Sostiene el apelante que no es aplicable el Código de Comercio sino el de Enjuiciamiento Civil. Mantiene la teoría de que no obstante haberse vencido el término por el que fué constituída, Sobrinos de Ezquiaga, S. en C., no está en liquidación, no puede ponerse en liquidación sino a virtud del voto unánime de sus socios y como tal requisito no se ha obtenido, subsiste aún en todo su vigor.

No hay duda alguna que la parte final de la cláusula vigésima se presta a interpretaciones varias, pero la que le da el demandante es tan exagerada que pudiera resultar, como resultó en este caso, imposible de cumplir.

La historia de la sociedad demuestra que el pensamiento fundamental de sus socios durante más de un siglo, fué mantenerla siempre en pie, con su misma razón, dedicada a la misma línea de negocios, aprovechándose así del crédito que naturalmente inspira una institución que ha podido resistir todas las crisis y salir adelante, cada vez más fuerte; pero esa misma historia demuestra que las diferentes escrituras de constitución fijaron un término al contrato social y fueron interpretadas en el sentido de realizar las gestiones para proseguir o transmitir los negocios a una nueva sociedad dentro de los términos respectivos.

El último término social vencía en diciembre de 1925. Ya existían, al parecer, diferencias entre los socios, y se acordó una prórroga de seis meses. La evidencia demuestra que no sólo se trató de resolver el problema en el seno

de la sociedad, sino que se acudió a dos comerciantes de San Juan de reconocido prestigio, Alberto E. Lee y José María del Valle, y se les pidió que actuando el primero a nombre del demandante, y de los otros socios el segundo, trataran de avenirlos. Las actas levantadas hablan de sus gestiones persistentes, de las medidas por ellos propuestas, entre las cuales se insistió en la prórroga del contrato, o en la formación de una nueva sociedad, o en la compra por unos de los derechos de otros, pero bajo ningún medio se pudo llegar a un acuerdo. Las diferencias entre el demandante de una parte y los otros socios de la otra, eran irreconciliables y hondas en verdad. Por ejemplo, Mendía sostiene que tiene su capital íntegro de $130,000 en la sociedad y los demás socios que la cuenta particular de Mendía arroja un débito de $180,000. Mendía imputa entonces fraude en los asientos de los libros de contabilidad.

Bajo esas circunstancias no era posible continuar la sociedad. La propia cláusula vigésima comienza estipulando "que llegado el momento de disolverse la sociedad que ahora se constituye por expiración de su plazo," y marca entonces el rumbo a seguir, revelador del pensamiento fundamental de permanencia a que antes nos referimos. Pero los contratos con cláusulas imposibles de cumplir no son válidos. La cláusula de que se trata en este caso es posible, enteramente posible de cumplir cuando existe armonía o cuando si existió discordia pudo ésta dirimirse a tiempo, pero cuando la realidad de los hechos es tal que impide llegar a un acuerdo unánime, reconocer a un solo socio el poder de, no obstante haber vencido el término social, hacer que la sociedad continúe viva, realizando sus negocios hasta que logre imponer su voluntad a la mayoría de los socios, sería contrario a la naturaleza humana y convertiría dicha cláusula en algo imposible de cumplir y por consiguiente nulo.

[2, 3] Estamos enteramente conformes con el demandante y apelante en que el contrato es la ley suprema entre las

partes contratantes y en que los actos de los socios de Sobrinos de Ezquiaga, S. en C., deben ajustarse a lo que ellos mismos pactaron. Así lo reconoce el mismo Código de Comercio. Pero sostenemos que cuando surge una situación no prevista, o regulada en forma tal que es imposible de resolver de acuerdo con el contrato, entonces hay que recurrir a la ley, a los principios generales de derecho, a la equidad, a los precedentes o a la costumbre del lugar. Y ello es así especialmente en un caso como éste en que se trata de un contrato social que debe ajustarse a las prescripciones de la ley que lo regula. Sobrinos de Ezquiaga, S. en C., se constituyó como una sociedad mercantil en comandita de acuerdo con las leyes de Puerto Rico y esas leyes contienen todos los preceptos necesarios para resolver el conflicto que en su seno surgiera.

De modo terminante prescribe el artículo 221 del Código de Comercio que las compañías de cualquier clase que fueren se disolverán totalmente entre otras causas por "el cumplimiento del término prefijado en el contrato." Aquí el término prefijado venció; luego la sociedad, como tal, como negocio en pie, quedó por ese solo hecho totalmente disuelta.

De acuerdo con la letra y el espíritu del contrato se trató de que la sociedad pasara a otra, pero lo que se había logrado en el pasado, no se logró en el presente. Surgió un conflicto irreconciliable entre los socios. ¿Qué hacer? Lo que hizo el propio demandante, esto es, acudir a la corte para que lo dirimiera de acuerdo con la ley.

¿Lo dirimió? Sostiene que no el apelante porque la decisión que dictara lleva consigo la liquidación de la sociedad y ésta sólo puede decretarse por el voto unánime de los socios y tal voto no se ha obtenido.

Ya hemos visto que la interpretación que el demandante da a la cláusula en que basa toda su contención, no puede adoptarse. Siendo ello así, la corte actuó con razón derecha al no conceder lo que se le pedía en la forma en que se

le pedía.  La liquidación es de tal modo la única solución que procede, que el mismo demandante termina por pedirla y no por el voto unánime de los socios sino por la decisión del síndico que la corte le nombrara.

El apelante insiste en que la corte sólo tenía poder para conceder o negar lo que le pidiera, en los exactos términos en que la petición se formulara.  Sin embargo, el demandante, según sus expresas manifestaciones contenidas en la demanda, acudió a una corte de equidad y a su equidad se sometió diciéndole que si no intervenía, la ruina descendería sobre la sociedad, y, finalmente, le pidió que le concediera además cualquier otro remedio que en su discreción estimara procedente, y la medida adoptada por la corte nombrando dos liquidadores ampara todos los derechos y se ajusta a lo prescrito para tales casos por el Código de Comercio.  No debe perderse de vista que los otros socios que constituyen la mayoría y que quizá pudieron hacerse fuertes en la posición que adoptaron por sí mismos poniendo en liquidación la sociedad y nombrando un liquidador extraño, ya que no existía avenencia entre los socios, acataron finalmente la resolución de la corte que ordenaba el nombramiento de dos síndicos liquidadores que deberían ser propuestos uno por cada parte.

[4] Veamos ahora si proceden o no los *injunctions* solicitados.

El pedido contra el demandado Enrique Adsuar como liquidador nombrado primeramente por la mayoría de los socios, carece en la actualidad de importancia porque tal posición dejó de existir para el futuro desde el momento en que se aceptó por los demandados la orden de la corte de 2 de agosto de 1926.  Se trata de la misma persona.  Adsuar juró el nuevo cargo y es a virtud de él que actúa ahora.  Existe algo que no se aclaró debidamente en relación con cierto pleito iniciado por Adsuar, pero los propios demandados sostienen que nada está haciendo Adsuar que no sea a virtud de su nuevo nombramiento.  Atendidas todas

las circunstancias creemos que se hace innecesario insistir sobre el particular y que la corte estuvo justificada en no librar el mandamiento en el momento en que dictó su orden. Quizá nunca, pues ya hemos insinuado que tal vez pudo ser nombrado liquidador válidamente por la mayoría de los socios de acuerdo con las disposiciones del Código de Comercio contenidas en la sección décimotercera del título primero del libro segundo y que se refieren al término y liquidación de las compañías mercantiles.

Nuestra opinión es diferente en cuanto al solicitado contra Sobrinos de Ezquiaga, Inc.

No disponemos del tiempo necesario para narrar con la extensión que quisiéramos los hechos y analizar por escrito el resultado de las pruebas. Bastará decir que la semejanza del nombre es tal y las circunstancias concurrentes de lugar, tiempo y personas tienden a convertir de tal modo la semejanza en identidad, que es evidente la procedencia del remedio que se pide. Prácticamente lo que la demandada Sobrinos de Ezquiaga, Inc., ha hecho es realizar el pensamiento de permanencia de la cláusula vigésima, aprovecharse del nombre y de la historia de la vieja sociedad cuyo valor no puede ponerse ni siquiera en duda, prescindiendo de uno de los socios, el demandante, con manifiesto perjuicio para el mismo, perjuicio que si la situación continúa no habría medio después de reparar justamente porque difícilmente podría estimarse después lo que hubiera producido en el mercado la venta del nombre, *good will,* de Sobrinos de Ezquiaga, S. en C., por los liquidadores a su debido tiempo. Tal proceder por parte de Sobrinos de Ezquiaga, Inc., no puede permitirse. El demandante Mendía debe tener el amparo de la corte y la orden de *injunction* preliminar por él solicitada debe ser expedida sin demora.

Parece conveniente citar en apoyo del criterio que adoptamos, el artículo 7 de la Ley de Corporaciones privadas de 9 de marzo de 1911, Comp. 1911, p. 96, que en lo pertinente dice:

"Art. 7.   Las cláusulas de incorporación . .   En ellas se consig-. narán:

"1.  El nombre de la corporación; pero no se tomará ningún nombre ya en uso por otra corporación, o tan parecido a éste que pudiera dar lugar a confusión o incertidumbre.

＊        ＊        ＊        ＊        ＊        ＊        ＊＂

A Ruling Case Law, que resumiendo alguna de la abundante jurisprudencia sobre la materia, en parte, expresa:

"Aunque en algunos casos se hace referencia a un nombre corporativo como si fuera una marca de fábrica, parece que es más propio sólo considerarlo como de la misma naturaleza.  Es una regla general que en ausencia de disposiciones estatutorias que regulen la materia, una corporación, al elegir un nombre, actúa a su riesgo. Aunque la corporación haya sido legalmente creada, no puede usar su nombre corporativo en violación de los derechos de los demás, exactamente lo mismo que un individuo no puede usar su nombre, legalmente adquirido, para engañar al público y causar daño a otro. En general puede también decirse que una corporación no debe mediante un artificio engañar al público con el propósito de que sus artículos se vendan como los de una persona o corporación que tenga el mismo nombre comercial.  E independientemente de cualquier intención de engañar al público, puede prohibírsele usar o hacer negocios bajo un nombre tan semejante al de una corporación, asociación, sociedad o individuo previamente establecido en la misma clase de negocio, que produzca confusión o perjuicio.  Y el hecho de que el nombre haya sido obtenido del estado no destruirá el derecho a un remedio restrictivo cuando los elementos esenciales para tal remedio resulten existir.  Además, la intención puede ser deducida en muchos casos de la semejanza del nombre elegido con el nombre de otra corporación."   26 R.C.L. 887–88.

Y, por último, al tratadista High on Injunctions, que dice:

. . "El derecho al uso de la razón social puede ser considerado como parte del activo de la sociedad, y si al efectuarse una disolución un miembro de la firma compra todo el negocio, se considera que el nombre se traspasa junto con el resto del activo, y al socio que se retira puede prohibírsele su uso.  Y un socio sobreviviente con derecho al uso de la razón social puede, si no ha abandonado el derecho, prohibir al albacea del socio fallecido el uso de la razón para

su propio beneficio.   De hecho, el crédito y clientela (*good will*) y el nombre de una sociedad constituyen una parte tan importante del activo de la misma que merecen protección en equidad mediante *injunction*.   Y la apropiación por un socio de un nombre social que imita tan de cerca el nombre original que engaña a los compradores y desvía el negocio de manos de la firma primitiva, puede ser restringida.   Y el demandado puede en tal caso ser restringido en el uso de su propio nombre en forma tal que engañe al público y perjudique el crédito y clientela (*good will*) de la firma; y esto puede hacerse a pesar de la quiebra de la sociedad y el nombramiento de un síndico, pues es necesario para preservar el crédito y clientela (*good will*) y el nombre como parte del activo de la sociedad.''   2 High on Injunctions, 1049.

Por virtud de todo lo expuesto *debe revocarse la orden apelada* en cuanto por ella se negó el mandamiento de *injunction pendente lite* contra Sobrinos de Ezquiaga, Inc., y ordenarse que se expida en la forma en que se pidió, esto es, prohibiendo a dicha corporación y a los demandados Juan B. Arzuaga, Miguel Mocoroa y José María Arzuaga, seguir usando dicho nombre, o cualquiera otro tan parecido que introduzca confusión, y prohibiéndoles también solicitar las agencias y negocios de Sobrinos de Ezquiaga, S. en C., como si fueran los representantes o sucesores de ella.   *En cuanto a sus otros pronunciamientos, la orden apelada debe confirmarse.*