Frank Abella Hernández et al., peticionarios, *v.* Tribunal Superior de Puerto Rico, Sala de San Juan, Hon. J. M. Calderón, Jr., Juez, demandado.

*Número:* C.J. de T. 64-4       *Resuelto:* 19 de abril de 1965

*Dubón & Dubón,* abogados de los peticionarios; *E. Martínez Rivera* y *Edelmiro Martínez, Jr.,* abogados de las interventoras María Saló y María del Carmen Seraballs Saló.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

Este es un incidente sobre ejecución de sentencia. En 3 de julio de 1964 María Saló y su hija menor María del Carmen Seraballs Saló solicitaron de la Sala de San Juan del Tribunal Superior la ejecución de una sentencia dictada a su favor por la cantidad de $105,000 y sus intereses, [1] y a tal efecto pidieron a la Sala que ordenara la venta en pública subasta de los bienes embargados en aseguramiento de sentencia, a saber: "todos los haberes, derechos, acciones, interés, participación y título del demandado Frank Abella

---

[1] *Vda. de Seraballs* v. *Abella Hernández,* 90 D.P.R. 368 (1964).

Hernández en la sociedad mercantil constituída bajo el nombre de 'Seraballs, Abella & Compañía' que opera bajo el nombre industrial de Santurce Soda Water." En igual fecha se dictó orden de ejecución.

En 22 de julio de 1964 el Tribunal concedió intervención a Rafael Padilla y Co. y a su socio gestor Rafael Padilla, quienes solicitaron la nulidad del embargo y la suspensión de la venta en pública subasta. Alegaron que Seraballs, Abella y Compañía era ahora Rafael Padilla y Co. y sus únicos socios con carácter de administradores lo eran Rafael Padilla y el demandado Frank Abella Hernández; que dicha sociedad no se había liquidado y que de llevarse a efecto la venta en pública subasta ordenada el efecto sería sustituir en la sociedad a un extraño en lugar del socio Frank Abella Hernández, sin el consentimiento del otro socio e interventor Rafael Padilla. Oídas las partes en cuanto a dicho planteamiento, en 17 de agosto de 1964 la Sala sentenciadora declaró sin lugar la intervención y se negó a suspender la subasta.

Fue de opinión la Sala sentenciadora que el derecho de las demandantes a cobrar la sentencia vendiendo en pública subasta los derechos y acciones que corresponden o puedan corresponder al deudor Frank Abella Hernández como socio de Seraballs, Abella y Compañía, denominada ahora Rafael Padilla y Co., no se limitaba al caso en que dicha sociedad estuviera disuelta o en liquidación; que el Art. 268 del Código Civil (ed. 1930) dispone que las acciones o intereses en compañías de comercio o industrias tienen carácter de bienes muebles respecto de cada miembro de la compañía durante el término de su existencia; y que de conformidad con los Arts. 1590 del Código Civil y 137 del Código de Comercio, "los acreedores particulares de cada socio pueden pedir el embargo y remate de la parte de éste en la sociedad"; y que por tanto, "es claro que la participación y título que el demandado en este caso tiene en la sociedad interventora está sujeta a embargo y ejecución y que las demandantes no tienen

que esperar para ejecutar el embargo al vencimiento del término de duración de la compañía . . . ." Sostuvo también la Sala sentenciadora que no era motivo para suspender la subasta el que el adjudicatario en el remate no pudiera entrar a la sociedad ni sustituirse en lugar del demandado Abella Hernández, y que quienquiera que adquiriera en el remate la participación o interés del demandado lo tomaría sujeto a dicha limitación.

La subasta se señaló para el 18 de agosto de 1964. En el edicto se hizo la advertencia o apercibimiento de que la persona que obtuviera la buena pro en el remate no podría sustituirse en lugar del demandado Abella para desempeñar los oficios que a él le tocaren en la administración social sin que precediera el consentimiento de los otros socios, según lo provisto en el Art. 120 del Código de Comercio y sujeto a lo dispuesto en el Art. 137 del mismo.

En la fecha en que la Sala sentenciadora desestimó la intervención, 17 de agosto, el demandado Abella Hernández y los interventores Rafael Padilla y Co. y Rafael Padilla presentaron solicitud de *certiorari* dirigida al ponente de esta opinión como Juez de Turno durante las vacaciones de 1964 del Tribunal para que revisara el referido fallo. Estando señalada la subasta para el día siguiente, 18 de agosto, solicitaron una orden manteniendo el *status quo ante*. En apoyo de su jurisdicción, el Juez de Turno suspendió el día 18 la celebración de la subasta señalada para ese día. En 21 de agosto de 1964 dictó auto de *certiorari* para revisar los procedimientos. Al cesar el Juez de Turno sin haberse perfeccionado el recurso y sin resolverse, el recurso es del Tribunal. (²)

Es correcto que el Art. 268 del Código Civil—ed. 1930— considera un bien mueble respecto de un socio durante el tiempo de la existencia de la sociedad las acciones o

---

(²) Aun cuando el Juez de Turno hubiera resuelto el asunto, el fallo era revisable en última instancia por el Tribunal, a solicitud de parte. Ley de 1ro. de marzo de 1902, enmendada por la 59 de 1931.

intereses en una compañía de comercio, industrias o cualquier otra especulación. También es correcto que de acuerdo con el Art. 1590 del propio Código los acreedores de la sociedad son preferentes a los acreedores de cada socio sobre los bienes sociales y, sin perjuicio de este derecho, los acreedores particulares de cada socio pueden pedir "el embargo y remate de la parte de éste en el fondo social".

Pero aquí se trata de una compañía mercantil y gobierna la materia con preferencia a las disposiciones mencionadas del Código Civil lo que disponga el Código de Comercio que sea de particular aplicación. El Art. 120 del Código de Comercio—ed. 1932—dentro del Título referente a las "Compañías Mercantiles", estatuye de la siguiente manera: "Ningún socio podrá trasmitir a otra persona el interés que tenga en la compañía, ni sustituirla en su lugar para que desempeñe los oficios que a él le tocaren en la administración social, sin que preceda el consentimiento de los socios". A tono con el espíritu de esa disposición el Art. 137 posterior, bajo el acápite referente a los derechos y obligaciones de los socios, dictamina que "Los acreedores de un socio no tendrán, respecto a la compañía, ni aun en el caso de quiebra del mismo, otro derecho que el de embargar y percibir lo que por beneficios o liquidación pudiera corresponder al socio deudor". Las disposiciones de este artículo específicamente aplicable en el caso de una compañía mercantil, impiden esta vez la aplicación que hizo la Sala sentenciador del Art. 1590 del Código Civil que autoriza al acreedor de un socio a pedir el embargo y remate de la *parte* de aquél en el *fondo social*.

La diferencia de concepto entre el Código Civil y el Código de Comercio se explica por la naturaleza misma de las operaciones mercantiles que requieren, por cuanto están envueltos los intereses pecuniarios del público en general que comercia, una mayor certeza y estabilidad del capital social. No debe olvidarse que en las compañías de comercio los socios colectivos han de responder solidariamente y con toda

su solvencia económica, al resultado de las operaciones—Cod. de Comercio, Arts. 104, 125, ed. 1932—lo cual no es así en la sociedad civil.

Refiriéndose al Art. 137 del Código de Comercio de la edición de 1932, que es el 174 de la Compilación de 1911 y 174 del Código de Comercio Español de 1886, Benito (hijo), en su trabajo *"La Personalidad Jurídica de las Compañías y Sociedades Mercantiles"* comenta a la página 111:

"Cuando se constituye una Sociedad con ánimo de lucro, los asociados consignan para ello los bienes que han de formar el capital social. Estos bienes se deben encontrar por virtud de la doctrina de la personalidad absolutamente separados de la fortuna de cada uno de los socios y únicamente pueden ser afectados por las resultas de las operaciones sociales. Tal es lo que ha querido consagrar la ley, puesto que, según ella, el que forma parte de una Sociedad civil o mercantil se compromete a no privarla de los recursos que aportó mientras ésta dure. No puede, por tanto, un asociado hipotecar o enajenar su parte, *como tampoco los acreedores personales de éste pueden disponer de ella,* sobre la que no tienen más derechos que los que tenga su deudor; . . . ." (Énfasis puesto.)

Después de referirse a jurisprudencia del Tribunal Supremo de España en torno al Art. 127 (104 ed. 1932), que como se sabe obliga a los socios solidariamente con todos sus bienes, a las operaciones de la compañía, dice:

"Examinemos la justicia de los dos principios contenidos en los artículos 127 [104] y 174. Este último [174 (137)] tiene tal importancia que sin él sería imposible la constitución de Compañías colectivas o comanditarias simples, porque nadie se expondría a que en cualquier momento *el acreedor* de un consocio le retirase una parte del capital, comprometiendo así, de modo indudable, el resultado de las demás operaciones pendientes. Pero esta declaración no obedece—como asegura el Tribunal Supremo —a la existencia de personalidad de estas Compañías. Es simplemente una medida de garantía que sirve de base de confianza a la constitución de la Compañía mercantil. Y que esto es evidente, se deduce de la excepción que en favor de las constituídas por acciones al portador (forma comercial por excelencia, adoptada

por la mayor parte de las Sociedades en cuanto se ha desembolsado el tanto por ciento necesario) establece el mismo artículo, siendo, como son, precisamente, estas Sociedades las en que tiene verdadera vida propia la personalidad".([3]) (Énfasis puesto.)

Y véase la tan citada *Sentencia* del Tribunal Supremo de España de 25 de noviembre de 1898, y *Sentencia* de 12 de julio de 1883.

Expone el Profesor González de Echávarri y Vivanco, ([4]) que "todo el derecho que el Artículo 174 [137] concede a los acreedores de los socios en relación con los bienes de éstos en la Sociedad, se limita a que puedan embargar y percibir lo que por *beneficio o liquidación* pudiera corresponder al socio deudor. [Énfasis del autor.] Toda interpretación de este artículo tiene que girar dentro de un límite forzoso. Los acreedores de un socio no pueden nunca tener mayor derecho sobre los intereses sociales que aquel que corresponde al socio deudor. ¿Podrán pedir los acreedores que se liquiden beneficios? En realidad, y tratándose de Sociedad, no puede hablarse de beneficios o pérdidas, sino hasta su disolución. Sin embargo, los usos mercantiles consagran que por períodos semestrales, anuales o según establezca la escritura, se liquiden los beneficios, y tan generalizado está el sistema, que hay Código, como el alemán, que ha reconocido en su artículo 122, copiándolo del anterior, el derecho de los asociados a reclamar beneficios anuales cuando dicho derecho no se ejerza con perjuicio manifiesto de la Sociedad. Ahora bien; en nuestra patria el socio no puede hacerlo, ni menos los acreedores para conseguir el pago de su crédito." ([5])

---

([3]) Por la Ley Núm. 42 de 1930 la Legislatura enmendó el Art. 174— 137 ed. 1932—eliminándole su segundo párrafo referente a las compañías constituidas por acciones a que hace alusión el autor.

([4]) *Comentarios al Código de Comercio y Jurisprudencia Española*, 3ra. ed., 1945, Tomo III, pág. 274.

([5]) No deseamos anticipar en la disposición de este caso criterio alguno sobre estas últimas consideraciones del autor en cuanto a la manera en que el acreedor del socio puede hacer valer su derecho bajo el Art. 137.

Tratando sobre la responsabilidad de los socios con sus bienes personales por las deudas de la sociedad, Joaquín Garrigues apunta como problema distinto el de la responsa- bilidad de los socios por sus deudas particulares y dice, siguiendo la doctrina, que los acreedores particulares de un socio no pueden embargar y vender la participación del socio, "ni en el aspecto personal—puesto que la posición del socio es insustituible, Art. 143—[120 ed. 1932] ni en el aspecto pa- trimonial—puesto que lo aportado por el socio ha dejado de ser suyo para pasar al patrimonio de la sociedad—". "El acreedor", dice, "tiene que contentarse con embargar las ganancias de su deudor y, en caso de liquidación, la parte que le corresponda en la división del haber social".[6] En torno a los beneficios, se pronuncia Gay de Montellá, *Código de Co- mercio Español* (1936) Tomo II, págs. 350 y ss., que hasta el momento de acordarse su reparto en concepto de dividendo, no pasan aquellos a formar parte del patrimonio del accio- nista y hasta ese momento no son embargables, por razón del derecho que reconoce a los acreedores del socio el Art. 174, y que hasta ese momento el derecho del accionista al beneficio o a las reservas detraídas del beneficio no son individualiza- das.

Este Tribunal también ha hecho expresiones. En *Quin- tana Hns. & Cía.* v. *S. Ramírez & Cía., et al.*, 22 D.P.R. 761 (1915), decidido en el año 1915, la acreedora personal de un socio embargó ciertas existencias de una sociedad en cantidad que decía representaba el monto del haber social de dicho so- cio. Al revocar la sentencia que sostuvo el embargo, se dijo que los socios tienen un interés en el capital social, pero tal interés sigue el destino de la Sociedad, y que sólo cuando ésta se disuelva y liquide, es que los socios adquirirán individual- mente para sí lo que les corresponda. Se dijo también que el Art. 246 del Código de Enjuiciamiento Civil de 1904 no había

---

[6] *Tratado de Derecho Mercantil* (1947) Tomo I, Vol. 1°, págs. 572 y ss.

derogado las disposiciones ya vigentes del Art. 174 (137 ed. 1932) del Código de Comercio, y que el acreedor de un socio de una compañía mercantil tenía y tiene medios legales para asegurar su crédito en la participación que pueda corresponder al socio en el capital de la Compañía, pero que ni antes ni después autorizaba la ley a un acreedor de un socio para, con el objeto de asegurar su crédito, introducirse en el seno de la Sociedad, señalar él mismo la participación del socio, extraer bienes de la sociedad iguales en valor al de la indicada participación y entregarlos en depósito a una persona distinta, pudiendo destruir así, plenamente, la vida de la Sociedad.

■ El Art. 246 del Código de Enjuiciamiento Civil sometía de manera expresa a una orden de ejecución de sentencia "las acciones y participación en cualquiera corporación o compañía", y declaraba que tales acciones o participación podían ser embargadas en virtud de la orden de ejecución. En el caso de *Quintana* dijimos que dicho Art. 246 no derogaba ni dejaba sin efecto las disposiciones del 174 del Código de Comercio, hoy 137. Con mayor certeza podemos afirmar que ésa es la situación al resolver este caso por cuanto el Art. 246, que autorizaba el embargo de la participación de un socio para la ejecución de una sentencia, fue derogado por la Regla 72 de las de Procedimiento Civil de 1958. Y véanse, en relación con el problema, *Banco Español de Puerto Rico, et al.* v. *Bolívar, et al.*, 7 D.P.R. 66 (1904), a la pág. 86; *Puigdollers* v. *Monroig*, 14 D.P.R. 204 (1908), a las págs. 223 y ss. en cuanto a los beneficios ya habidos correspondientes a un período determinado de las operaciones sociales; *Perales* v. *Sampayo*, 36 D.P.R. 897 (1927), a la pag. 902 donde se repite, aplicándose estrictamente el Art. 137, que el acreedor de un socio no tiene, respecto a la Compañía, otro derecho que el de embargar y percibir lo que por beneficio o liquidación pudiera corresponder al socio deudor. También: *Fonalledas* v. *Corte de Distrito*, 33 D.P.R. 32 (1924), págs. 36 y ss.

■ No procede en el caso presente la venta en pública subasta de los haberes, derechos, acciones, interés, participación y título del socio Abella Hernández en la Sociedad Rafael Padilla y Co., según anunciado en el edicto de subasta. El hecho de que en dicho edicto se aperciba al adjudicatario que no podrá realizar la gestión social en sustitución de Abella a tenor del Art. 120 del Código de Comercio, asumiendo sin que lo resolvamos ahora, que dicho artículo rige en una cesión forzosa o por orden judicial al igual que en una cesión voluntaria, no cura la situación ni hace permisible, contra la prohibición del Art. 137, la venta en subasta de su participación social. Ese apercibimiento o advertencia más bien crea una anomalía en el edicto mismo, ya que, quien poseyera el haber o capital social, no podría ejercer función alguna de socio ni siquiera para defender el capital contra las actuaciones de otro, y en contrario, habría una persona ejerciendo facultades de un socio sin conservar esa condición al perder el capital aportado por él.

■ No resolvemos que las demandantes no puedan embargar y hacer suyos, a tenor del Art. 137, cualesquiera beneficios de la sociedad que individualizados según los usos y costumbres mercantiles, se identifiquen como propiedad particular del socio Abella, o que no tengan derecho a embargar y hacer suyo lo que por devolución de capital o en cualquier otro concepto sea de Abella en su día. Mientras tanto, dicho capital o participación no le pertenece. Sus acreedores personales no pueden alcanzarlo ahora mediante venta del mismo en subasta.

*Se anulará la Resolución de la Sala sentenciadora que se revisa y no habrá lugar a llevar a efecto la subasta hasta ahora suspendida.*