SERABALLS, ABELLA & CÍA. ET AL., peticionarios, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. FAUSTO RAMOS QUIRÓS, JUEZ, demandado.

*Número:* C-66-120      *Resuelto:* 12 de mayo de 1967

*Dubón & Dubón* y *A. Torres Braschi,* abogados de los peticionarios; *Edelmiro Martínez Rivera* y *Edelmiro Martínez, Jr.,* abogados de los interventores.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Dávila y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Es éste el segundo intento para lograr la ejecución de la sentencia que confirmamos en *Vda. de Seraballs* v.

*Abella Hernández*, 90 D.P.R. 368 (1964). En el primero, después de una amplia y elaborada discusión del derecho de un acreedor particular de un socio colectivo de una sociedad mercantil para embargar y adjudicarse la participación de éste en el haber de la razón social, dijimos, en *Abella Hernández* v. *Tribunal Superior*, 92 D.P.R. 279 (1965), que el Art. 137 del Código de Comercio, 10 L.P.R.A. sec. 1435, vedaba la venta en subasta judicial de la participación social. No obstante, admitimos que ello no significaba que el acreedor particular no pudiera embargar y hacer suyos, mediante el trámite judicial apropiado, cualesquiera beneficios de la sociedad que, individualizados conforme a los usos y costumbres mercantiles, se identifiquen como de la propiedad del socio deudor, así como lo que por concepto de devolución de la inversión en el capital, o de otro modo, pudiera corresponderle en su día.

█ Preténdese ahora forzar la disolución de la sociedad Rafael Padilla & Cía. mediante el nombramiento de un síndico alegándose como causa de disolución que el socio deudor tiene restringida su capacidad jurídica por estar incurso en interdicción civil. En efecto, en *Pueblo* v. *Abella Hernández*, (Sentencia de 16 de febrero de 1966), confirmamos la sentencia que se la había impuesto al socio Frank Abella Hernández por un delito de asesinato en segundo grado, y desde entonces, se encuentra recluido en la Penitenciaría Estatal.

█ Veamos las vicisitudes de la sociedad de que se trata. En 4 de marzo de 1959, por término de cuatro años, Rafael Padilla, José A. Seraballs, Pedro Seraballs y Frank Abella Hernández constituyeron una sociedad mercantil regular colectiva bajo la razón Seraballs, Abella y Cía. En 26 de febrero de 1963 cambióse el nombre social a Rafael Padilla & Cía., prorrogándose el vencimiento hasta el 28 de febrero de 1966. En 22 de julio de 1965—antes de que la condena que

produjo la interdicción civil de Frank Abella Hernández fuera firme—éste y Rafael Padilla, para ese entonces los únicos socios en la mercantil, admitieron a Venicio R. Colón como socio colectivo, con el carácter de gestor y administrador. En adición a convenir una prórroga indefinida del término del contrato social, (¹) se adoptó un pacto expreso para regir en el caso del fallecimiento, demencia o inhabilitación de cualquiera de los socios, que lee así:

*"Fallecimiento, Demencia o Inhabilitación*

. . . Decimoquinta:—(a) *No se disolverá esta sociedad por el fallecimiento, demencia u otra causa que produzca la inhabilitación cualquiera de sus socios.* Los negocios y operaciones de la sociedad continuarán bajo la gerencia y administración de los demás socios gestores sobrevivientes, hábiles o capacitados, *sin que puedan intervenir en forma o manera alguna en dicha gerencia o administración, los herederos del socio fallecido, o los representantes legales del socio incapacitado o inhabilitado.*

. . . (b) En caso del fallecimiento de cualquiera de los socios su interés o participación en el capital de la sociedad pasará a ser de sus herederos, o del, o a los que de ellos sea adjudicada dicha participación, en las operaciones particionales de la herencia del socio fallecido, ingresando a la sociedad dicho heredero o herederos, según sea el caso, con el carácter de socio comanditario, con una aportación al capital de la sociedad igual a la participación que correspondía a su causante en el capital de la sociedad, según esta participación hubiere sido determinada y liquidada, al practicarse el último balance anual de la sociedad anterior a la fecha en que hubiese ocurrido el fallecimiento, y con igual participación en los beneficios o ganancias líquidas de la sociedad. Si el heredero o herederos del socio fallecido a quien se adjudicara dicha participación fueran ya parte de la sociedad como socios de la misma, en tal caso, la participación del socio fallecido en el capital de la sociedad

---

(¹) Del texto del Art. 143 del Código de Comercio, 10 L.P.R.A. sec. 1456, se deduce que es lícito el pacto de duración indefinida, pero se atempera a la facultad de cualquiera de los socios para exigir la disolución en cualquier momento, a lo cual no podrán oponerse los demás, salvo el caso de que quien exigiere la disolución obrare de mala fe.

será acreditada a la cuenta capital de dicho heredero o herederos, sin que en forma o manera alguna se afecte el carácter del socio que dicho heredero o herederos tuvieran entonces en la sociedad.

. . . (c) *En caso de demencia, incapacidad u otra causa que produzca la inhabilidad del socio, si fuera un socio gestor, cesará como tal, pero continuará formando parte de la sociedad con el carácter de socio comanditario,* con su misma participación en el capital de la sociedad, según dicha participación hubiera sido determinada y liquidada al practicarse el último balance anual de la sociedad, anterior a la fecha de la demencia, incapacidad u otra causa de inhabilitación, y con igual participación en los beneficios o ganancias líquidas de la sociedad.

. . . Una vez desaparecida la causa que produzca la inhabilidad del socio, o que por declaración judicial el socio demente o incapacitado, fuere rehabilitado, dicho socio, si hubiera sido uno de los socios colectivos y gestores de la sociedad, *tendrá derecho, a su opción a ser restituido en dicho carácter de socio colectivo de la compañía y gestor y administrador de la misma,* a partir de la fecha del otorgamiento de la correspondiente escritura, con el concurso y asentimiento de cualquiera de los otros socios gestores de la sociedad, en la que se declare su ingreso o restitución como tal socio colectivo de la compañía y gestor y administrador de la misma.

. . . (d) El socio gestor que falleciere, se incapacitare o se inhabilitare, dejará de continuar devengando el sueldo que como tal socio gestor devengue por sus servicios personales a la sociedad, a partir de la fecha de su fallecimiento, demencia u otro causa que produzca su inhabilitación." (Énfasis nuestro.)

Además se designó gestores y administradores a los tres socios colectivos, y, se proveyó que, en caso de disolución, éstos actuarían como liquidadores con las limitaciones que imponía la cláusula transcrita.

Dentro del pleito civil 61-8992, sobre daños y perjuicios, en el cual ni la sociedad Rafael Padilla & Cía., ni sus socios regulares colectivos Rafael Padilla y Venicio R. Colón son parte, la parte demandante María del Carmen Saló, por sí

y en representación de su hija María Seraballs, solicitó mediante moción jurada de fecha 29 de abril de 1966 que se dictara una orden para la liquidación, por un síndico que se designaría por el tribunal, de la sociedad mencionada. El juez a quo concluyó que la interdicción del socio Abella Hernández había producido la terminación del contrato social, accedió a lo solicitado, y nombró al Lic. Álvaro Calderón para que en cumplimiento de la orden y, conforme a lo dispuesto en la Regla 56.6 de las de Procedimiento Civil, se incautara de los bienes y efectos de la sociedad, y una vez liquidada, se satisficiera con lo que correspondiera al socio Abella el balance insoluto de la sentencia dictada a favor de las demandantes.

Acordamos revisar estas actuaciones. En auxilio de nuestra jurisdicción dejamos en suspenso los efectos de la orden impugnada y dispusimos que los negocios de la mercantil Rafael Padilla & Cía. continuaran bajo la gerencia y administración de sus socios gestores hábiles.

La restricción de la capacidad jurídica que dimana de la interdicción civil (²) tiene sus efectos reconocidos, de orden patrimonial, en la esfera de los negocios mercantiles. El Art.

---

(²) Art. 24 del Código Civil, 31 L.P.R.A. sec. 81, en relación con los Arts. 20 y 22 del Código Penal, 33 L.P.R.A. secs. 41 y 43; *Vega* v. *Tossas,* 70 D.P.R. 392 (1949). Para efectos específicos de la interdicción en el Derecho civil, véanse, el Núm. 2 del Art. 96, 31 L.P.R.A. sec. 321, que la estatuye como causa de divorcio, *Mora* v. *Oquendo,* 65 D.P.R. 569 (1946); *Torres Archilla* v. *Archilla,* 36 D.P.R. 771 (1927); los Arts. 191 a 193, 31 L.P.R.A. secs. 714 a 716, que proveen para tutela en caso de interdicción; el Núm. 6 del Art. 630, 31 L.P.R.A. sec. 2146, que la reconoce como causa de inhabilitación para ser testigo en los testamentos; el Núm. 4 del Art. 778, 31 L.P.R.A. sec. 2456, que la reconoce como causa de desheredación de los hijos y descendientes legítimos; el Núm. 3 del Art. 1591, 31 L.P.R.A. sec. 4391, que la considera como causa de extinción de la sociedad civil; el Art. 1623, 31 L.P.R.A. sec. 4481, que la enumera como causa para la extinción del mandato.

Véanse, en cuanto a los otros efectos, el Art. 3(d) de la Ley Núm. 59 de 19 de junio de 1965, 4 L.P.R.A. sec. 643 (Sup. 1966), y la Ley Núm. 70 de 20 de junio de 1963, 3 L.P.R.A. secs. 556a a 556e, en relación con la Sec. 12 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico.

4 del Código de Comercio, 10 L.P.R.A. sec. 1004, dispone que "Tendrán capacidad legal para el ejercicio habitual del comercio las personas que reúnan las condiciones siguientes: (1) Haber cumplido la edad de veintiún años; (2) *Tener la libre disposición de sus bienes . . .*", y ampliando sobre el aspecto de la capacidad, dice en el Art. 7, 10 L.P.R.A. sec. 1007, que "No podrán ejercer el comercio ni tener cargo ni intervención directa administrativa o económica en compañías mercantiles . . . (1) *Los sentenciados a pena de interdicción civil,* mientras no hayan cumplido sus condenas . . .". Pero estos preceptos, sin más, no llevan necesariamente a la conclusión del tribunal de instancia que le reconoce efectos, no meramente en cuanto al interdictado personalmente, sino también respecto a la empresa mercantil de la cual forme parte.

Es indispensable considerar el Art. 141, 10 L.P.R.A. sec. 1454, que es, a nuestro juicio, la fuente de la norma de derecho aplicable. Reza así:

"Las compañías mercantiles, constituídas con arreglo a este Código, se disolverán totalmente por las causas que siguen:

(1) El cumplimiento del término prefijado en el contrato de sociedad;

(2) La pérdida entera del capital;

(3) La quiebra de la compañía;

(4) La muerte de uno de los socios colectivos, si no contiene la escritura social pacto expreso de continuar en la sociedad los herederos del socio difunto, o de subsistir ésta entre los socios sobrevivientes;

(5) La demencia u otra causa que produzca la inhabilitación de un socio gestor para administrar sus bienes;

(6) La quiebra de cualquiera de los socios colectivos." (³)

---

(³) Las causas de disolución a que se refieren los Núms. 4 a 6, ambos inclusive, fueron adicionadas por la Ley Núm. 42 de 25 de abril de 1930 (Leyes, pág. 321).

Corresponde con el Art. 222 del vigente Código de Comercio español. Es interesante el Art. 139 del Reglamento Mercantil español de fecha 14

La interpretación doctrinal en cuanto a este precepto traza una clara distinción en cuanto a estas causas especiales de disolución que se derivan de circunstancias personales de los socios y aquélla que atañe al pacto social mismo y a la entidad social. Concuerda en que esta última—el vencimiento del término prefijado—opera de pleno derecho porque se refiere a la existencia misma del ente social. Véanse, *Rodríguez* v. *El Registrador*, 22 D.P.R. 786 (1915), *Mendía* v. *Arzuaga*, 37 D.P.R. 368 (1927). No así en cuanto a las relacionadas con la personalidad de cualquiera de los socios, ya por la extinción como el caso del fallecimiento, o por restricción de la capacidad jurídica, como los supuestos de demencia, incapacidad o quiebra. A éstas se les denominan causas de disolución facultativas, pues sólo pueden ser invocadas por cualquiera de los otros socios, atendiendo al propósito de cohesión que informa la constitución de toda sociedad.

---

de diciembre de 1956, Medina y Marañón, *Leyes Civiles de España*, (ed. 1958), tomo I, pág. 335, que implementa, para fines registrales, lo relacionado con la inscripción de la disolución de las sociedades colectivas y comanditarias. Dice:

"139 Para la inscripción de la disolución de las Sociedades colectivas y comanditarias será necesario que conste el consentimiento de todos los socios colectivos, a no ser que la disolución tenga lugar por el cumplimiento del término prefijado en el contrato, por la declaración de quiebra de la Sociedad o de alguno de los socios colectivos o por el fallecimiento de cualquiera de éstos, si no existiere pacto expreso de continuar la Sociedad con los herederos del difunto o de subsistir entre los sobrevivientes. En cuanto al consentimiento de los socios comanditarios, se estará a lo dispuesto en la escritura social.

"En el primer caso, bastará que cualquiera de los socios colectivos lo solicite del Registrador mediante instancia con firma legitimada.

"En el segundo caso, deberá presentarse testimonio judicial de la declaración de quiebra.

"En el caso de fallecimiento de un socio colectivo bastará que cualquiera de los otros socios colectivos lo solicite del Registrador mediante instancia con firma legitimada, a la que se acompañará el certificado de defunción del Registro Civil.

"*En todos los demás casos deberá presentarse escritura pública.*" (Énfasis nuestro.)

La glosa de Rodrigo Uría en su obra *Derecho Mercantil* (2a. ed., 1960), págs. 132-134, recoge el criterio predominante, así:

"*Causas de disolución.*—Son de dos clases: contractuales y legales. Las primeras habrán de establecerse en el contrato originario o en ulterior modificación del mismo, gozando los socios de amplia libertad para determinarlas. Las segundas están recogidas en los artículos 221, 222 y 224, y entran en juego en defecto de causas contractuales que las excluyan.

Las causas legales de disolución son las siguientes:

1a. Cumplimiento del término de duración prefijado en el contrato (art. 221, núm. 1). Esta causa opera de pleno derecho, surtiendo efectos la disolución sin necesidad de declaración alguna de los socios, e incluso en perjuicio de tercero antes de ser inscrita en el Registro mercantil (art. 226). La ley excluye la prórroga tácita de la sociedad más allá del término de duración pactado. Para la eficacia de la prórroga habrá de formalizarse 'en escritura pública, presentada en el Registro mercantil antes de que transcurra el término de duración' (art. 141 Regl. Reg. merc. y Resoluciones de la D.G.R. de 6 de junio de 1952 y de 18 de enero de 1958). Transcurrido el término de duración, si los socios quieren continuar en sociedad tendrán que celebrar nuevo contrato (artículo 223). Dado el rigor de esta causa de disolución los socios suelen excluir su juego pactando en el contrato la duración de la sociedad por tiempo indefinido.

2a. .    .    .    .    .    .    .    .

3a. La pérdida total del capital social (art. 221, núm. 2). Tiene su explicación en las considerables dificultades que encontraría para el desarrollo de su empresa una sociedad carente de capital.

4a. La quiebra de la sociedad (art. 221, núm. 3). Los efectos que la quiebra trae para el quebrado (inhabilitación para la administración, desposesión de sus bienes y paso de la administración a los síndicos), aparte de que la quiebra es por esencia un procedimiento de liquidación, hacen inexcusable que la quiebra funcione como causa de disolución.

5a. La muerte de algún socio (art. 222, núm. 1). Esta causa se explica en razón a la índole esencialmente personalista de la sociedad. Con la muerte de cualquier socio necesariamente resultará afectado el vínculo contractual, contraído en atención a las condiciones personales de los asociados. Mas, como en las sociedades que aspiren a una vida prolongada ha de irse produciendo fatalmente el fallecimiento de los socios, el Código ha previsto la posibilidad de excluir esta causa de disolución, *pactando expresamente en la escritura la continuación de la sociedad con los herederos del socio difunto, o la subsistencia de aquélla entre los socios sobrevivientes*. En la práctica ambos pactos son muy frecuentes, y para el supuesto de que la escritura prevea la continuación de la sociedad con los herederos del socio fallecido, el Tribunal Supremo ha declarado que con la aceptación pura y simple de la herencia aceptan los herederos los derechos, las obligaciones y las responsabilidades del causante derivadas del contrato social y entran de derecho a formar parte de la sociedad (Sent. de 31 de marzo de 1959).

6a. La inhabilitación de un socio gestor para administrar sus bienes (art. 222, núm. 2). La razón de esta causa es la misma que la de la anterior, puesto que la inhabilitación equivale a la muerte civil, y el socio inhabilitado no puede continuar desempeñando el cargo de gestor.

7a. La quiebra de algún socio (art. 222, núm. 3). También esta causa está en la línea de las dos anteriores. La quiebra no sólo inhabilita al socio para administrar sus bienes, sino que, al poner en liquidación forzosa su patrimonio, repercute muy seriamente sobre el crédito de la sociedad (que en definitiva es el de sus socios) y disminuye las garantías de los acreedores sociales.

8a. La denuncia unilateral del contrato (arts. 224 y 225). Es una causa que juega solamente en el supuesto—muy frecuente, por cierto—de que la sociedad se haya constituído por tiempo indeterminado. Para este caso el artículo 224 previene que 'si algún socio exigiere su disolución los demás no podrán oponerse sino por causa de mala fe en el que la proponga'. Por mala fe entiende la ley el propósito de obtener un lucro particular que no se obtendría subsistiendo la sociedad. Ejercitada la facultad de denuncia del contrato, el socio promotor de la disolución no podrá impedir que se aplace la división del haber

social hasta que se terminen las operaciones sociales pendientes (art. 225).

*De todas estas causas legales de disolución, aparte de la primera, que actúa ipso iure, según hemos visto, las demás son a modo de condiciones o presupuestos legales necesarios para que pueda producirse la disolución, pero ésta sólo tendrá lugar si ulteriormente se hace valer la causa por todos o algunos de los socios."* (Énfasis nuestro.)

En el mismo sentido se pronuncian Gay de Montellá, [4] Benito, [5] Garrigues [6] y Vivante. [7] El Profesor Rubio de la Universidad Central de Madrid, al referirse a las causas de disolución, afirma que no son causas de terminación, "sino supuestos jurídicos para que en su día ésta se produzca". [8]

Refiriéndose específicamente a la disolución por la demencia u otra causa de inhabilitación de un socio gestor para administrar sus bienes, dice Gay de Montellá, en su *Tratado Práctico de Sociedades Mercantiles*, tomo 1, pág. 365, que:

"Debe entenderse siempre que esta cláusula es solamente eficaz, cuando en la escritura o en el Estatuto no se haya previsto el caso o la manera de solucionar el conflicto creado por tales incapacidades."

Por analogía es de aplicación lo resuelto por el Tribunal Supremo español en Sentencia de 21 de septiembre de 1907 (Jur. Civil, tomo 108, pág. 338), en la que al considerar el

---

[4] *Tratado Práctico de Sociedades Mercantiles*, tomo 1, pág. 365, que al referirse a las causas de disolución especiales, dice: "Inserta la de la muerte de un socio colectivo, la demencia u otra causa de inhabilitación de un socio gestor y la de la quiebra de un socio colectivo, causas las tres que no operan de derecho la disolución de la Compañía, sino que son meramente facultativas . . .".

[5] *Manual de Derecho Mercantil*, tomo III, págs. 380–381.

[6] *Tratado de Derecho Mercantil*, tomo 1, vol. 3, págs. 1209–1213.

[7] *Tratado de Derecho Mercantil*, vol. II, págs. 496–497.

[8] *El principio de la conservación de la empresa y la disolución de las sociedades mercantiles en el Derecho español*, Revista de Derecho Privado, tomo 22, págs. 288–306, especialmente a las págs. 291, 292 y 295.

efecto del fallecimiento de un socio, expresó que las causas de disolución estatuidas en el Art. 222 del Código de Comercio no son tan absolutas "que impliquen *ipso facto* por ministerio de la ley de extinción de la Sociedad, y menos que sea obstáculo a que los en ella interesados continúen por mutuo consentimiento las operaciones a que venían dedicados". (Pág. 341.)

■ Aplicados los principios expuestos al caso de autos resalta la previsión de los socios de Rafael Padilla & Cía. al proveer en el pacto social para la contingencia de la inhabilitación de un socio gestor. Independientemente de los motivos que puedan haber inspirado su adopción, el régimen estatuido no contraviene la ley. El tribunal no puede sustituir la voluntad de las partes. A los acreedores particulares del socio inhabilitado no pueden reconocérsele, más derechos que aquellos que se le señalaron en *Abella Hernández* v. *Tribunal Superior*, supra. (⁹)

■ Pero aun cuando la posición del tribunal recurrido fuera sostenible y procediera la disolución por la mera interdicción de uno de los gestores, la sindicatura no sería el remedio legal. A ello se opone expresamente el Art. 147 del Código de Comercio, 10 L.P.R.A. sec. 1460, que inviste en la calidad de liquidadores a los socios administradores. Y específicamente el 153, 10 L.P.R.A. sec. 1466, que para el caso de la liquidación en que tenga interés un menor o incapacitado, dispone que obrarán el padre, madre o tutor de éstos con plenitud de facultades como si se tratara de negocio

(⁹) En 28 de octubre de 1965 la parte demandante en el pleito principal solicitó y obtuvo por vía de aseguramiento una orden dirigida a la sociedad Rafael Padilla & Cía., y a sus socios gestores para que se abstengan de pagar al demandado Abella cualquier cantidad que le corresponda por beneficios liquidados o que se liquiden en el futuro o por concepto de devolución de capital aportado, y requiriendo además que dichas cantidades se depositaran en la Secretaría del Tribunal a los fines de la ejecución de la sentencia dictada. (T.A. págs. 191–195.) La orden de aseguramiento contiene otros particulares que no es necesario reseñar.

propio. De otra forma se estaría logrando lo que precisamente se trata de evitar, la ingerencia de un extraño en intereses ajenos a los que inspiraron la organización de la sociedad. [10]

*Se anulará la resolución dictada por el Tribunal Superior, Sala de San Juan.*

_____

[10] En general, sobre la procedencia de una sindicatura, véanse, *Freeman* v. *Tribunal Superior,* 92 D.P.R. 1 (1965), y casos allí citados.